# Moses *et al v.* St. Paul *et al.*

*Bill in Equity to Compel Transfer of Stock, and for an Account.*

1. *Creditor by simple contract; when may come into equity to enforce collection of his debt.*—A simple contract creditor cannot obtain the assistance of a court of equity to compel the payment of his debt, unless he has a lien which it is the province of that court to enforce, or his case is one of the particular class for which provision is made by the statute.

2. *Same; where the demand is legal, an equity must be shown.*—When the demand is purely legal, the creditor must show, in addition thereto, some clear, controlling equity, which he is entitled to enforce.

3. *Statute of limitation in suits by assignees in bankruptcy; what are embraced in.*—The provision of the bankrupt law declaring that no suit, either at law or in equity, "shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property, transferable to, or vested in, such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee (Rev. Stat. U. S. § 5057), applies not only to suits in which the assignee is the real and beneficial actor, but also to suits upon causes of action derived from him after the statutory bar is complete; and it extends to every cause of action existing when the assignment is executed to the assignee, and the right and title to sue in respect to which is derived from the assignment, and is independent of the State statute of limitations.

4. *When fraudulent concealment of facts will take case out of statute.*—Fraudulent concealment of facts by the bankrupt, until after the completion of the statutory bar, will take the case out of the operation of the statute of limitations, as against him or persons colluding with him, but not as against innocent persons claiming adversely to him.

[Moses et al. v. St. Paul et al.]

APPEAL from Mobile Chancery Court.

Heard before Hon. H. AUSTILL.

The Tuscaloosa Scientific and Art Association, a corporation under the laws of Alabama, became indebted to Walsh, Smith & Co., for $53,992.30.  To secure the payment of this sum, the association hypothecated 274 shares of its capital stock with Walsh, Smith & Co., by actual delivery, and agreed that 50 per cent. of the net earnings should be devoted to payment of its debt.  On June 12th, 1874, Walsh, Smith & Co. were adjudicated bankrupts, and Barnwall and Gaynor were appointed assignees of the bankrupt estate. The assignees, on June 3, 1875, applied for leave to sell the debts, judgments, &c., due said firm, and an order to that effect was afterwards granted by Hon. J. Bruce, District Judge.  Walsh, Smith & Co., failed to place on their schedules, as bankrupts, and among their assets, the shares of stock in the Tuscaloosa Scientific and Art Association.  On the 22d of May, 1876, Gaynor, who was one of the assignees, learned that said association was indebted to Walsh, Smith & Co., and that said stock had been hypothecated with them. On the 20th of May, 1878, Gaynor, the assignee (Barnwall having resigned), sold, transferred and assigned said stock and debt to I. C. Moses, (appellant's intestate).  Moses took possession of 262 shares of said stock, and requested the secretary, Henry St. Paul, to transfer the same on the books of the corporation in his name, but this was refused.  Thereupon, said Moses filed this bill setting out the foregoing facts, and averring that the act of the bankrupts in omitting the debt due them from said association, and the certificates of stock hypothecated to secure the same, from their schedules, was a fraud on their creditors and on the bankrupt law ; that said debt, and the ownership of the stock, was concealed by said bankrupts to prevent their creditors from having the same sold.  The bill prayed that St. Paul, as secretary of said association, be compelled to transfer the said shares of stock to said I. C. Moses ; that an account be taken of the net earnings of the association, and that his *pro rata* share thereof be decreed to be paid to him.  A demurrer was interposed by the defendants, on the ground—1st. That more than two years had elapsed since the cause of action sought to be enforced by the bill accrued to the assignees, and the facts in relation thereto were known to the assignee more than two years before the filing of the bill.  2d. Because the corporation was not made a party defendant.  The Chancellor sustained the demurrer, and dismissed the bill, and his decree is here assigned for error, the appeal therefrom being

prosecuted in the name of A. J. Moses, as administrator of
I. C. Moses' estate.

BOYLES, FAITH & CLOUD, for appellant.—The facts stated
in the bill which are material and well pleaded, are taken as
true on demurrer.—Mitf. and Tyler Eq. Pl. 306. And it ap-
pears therefrom that the sale of the stock was made within
less than two years from the date of the discovery of the
fraud. In *Bailey, Assignee, v. Glover*, 21 Wall. 342, it is said :
" Where the action is intended to obtain redress against
fraud concealed by the party, or which, by its nature, re-
mains secret, the bar does not begin to run until the fraud is
discovered." And again, " when fraud has been concealed;
or is of such a nature as to conceal itself, the statute does not
begin to run until the fraud is discovered." The validity of
a sale of property by an assignee in bankruptcy cannot
be questioned in a collateral proceeding in a State court.
*Steele v. Moody*, 16 Nat. Bk. R. 2. Where a pledge remains
in possession of a pledgee, the statute of limitations does not
begin to run against the pledgor until tender of the debt for
which the pledge was given, and a refusal of the pledgee to
restore the pledge upon demand of the pledgor.—6 Ohio St.
131. The statute did not begin to run until after the demand
of the certificates and a tender of the money.—4 E. D. Smith,
490 ; 2 Abb. Pr. 301 ; 12 Johns Ch. 146 ; 16 Eng. Com. Law,
264 ; 6 D. & R. 384. Delivery of stock as collateral to se-
cure a pre-existing debt, is a pledge and not a mortgage.
4 Sand. (N. Y.) 74. The creditor cannot hold the pledge by
prescription, as no length of time will prevent the debtor or
his representative from redeeming.—2 Gaines' Cases, 213 ;
50 N. H. 37. The pledgee has a right to the possession,
although the pledgor becomes bankrupt.—5 Otto, 764. Nor
does it deprive the pledgee of the right to dispose of the
pledge upon default.—4 Otto, 734.

ST. PAUL & LABUZAN, and HERNDON & SMITH, for appellees.
(No briefs have come into the hands of the Reporter.)

BRICKELL, C. J.—A simple-contract creditor, without
a lien it is the province of a court of equity to enforce, ex-
cept in the particular cases for which the statutes provide,
(within which the present case does not fall), cannot obtain
the assistance of that court to compel the payment of his
debt. The jurisdiction and remedies of courts of law are
adequate, and there is no room for equitable intervention.
The debt due from the Tuscaloosa Art and Scientific Asso-

[*Moses et al. v. St. Paul et al.*]

ciation, or of the particular stockholders who may or not have made themselves answerable for it, to Walsh, Smith & Co., of which the appellant claims to be the assignee, is a pure legal demand, capable of enforcement by clear and adequate legal remedies; and, of consequence, to support the present bill, there must be shown, in addition to the legal demand, some clear, controlling equity the appellant is entitled to enforce.

The equity is grounded upon the ownership of the shares of the stock of the association, which had been pledged to Walsh, Smith & Co., as security for the debt; a transfer of which to himself, on the books of the association, the intestate of the appellant had demanded, and which had been refused; and an account of the corporate business, and the payment to him of whatever dividends or profits had accrued thereon. If the equity exists, it was derived from the sale and assignment to the intestate of the appellant, made by the asignee in bankruptcy of Walsh, Smith & Co., more than two years after his appointment, and the execution to him of an assignment of all the property and effects of the bankrupts. Whatever may be the nature and character of the claim, and of the right now asserted, it had accrued, and was in all respects as fully a cause of action in the bankrupts, and in the assignee at the time of his appointment, as it was when the sale and assignment was made to the intestate, or when this bill was filed. The bankrupt law had this provision: "No suit either at law or in equity, shall be maintainable in any court, between an assignee in bankruptcy and a person claiming an adverse interest, touching any property transferable to, or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee. And this provision shall not in any case revive a right of action barred at the time when an assignee is appointed."—U. S. Rev. Stat. § 5057. The question of the demurrer is, whether the case made by the bill falls within the operation of this statute; and if it does, are not the averments of fraud and concealment sufficient to avoid its bar.

The statute applies not only to suits in which the assignee is the real and beneficial actor, but also to suits upon causes of action derived from him, after the statutory bar is complete.—*Pike v. Lowell*, 32 Me. 245. He may not transfer any greater or other cause of action, than that which resides in him. And it is as applicable, by its very words, to suits in equity, as to suits in courts of law. It is said of it by the Supreme Court of the United States: " This is a statute of

limitation. It is precisely like other statutes of limitation, and applies to all judicial contests between the assignee and other persons, touching the property or rights of the bankrupt, transferable to, or vested in the assignee, where the interests are adverse, and have so existed for more than two years from the time when the cause of action accrued, for or against the assignee."—*Bailey v. Glover*, 21 Wall, 346. The statute applies to every cause of action existing when the assignment is executed to the assignee, and right and title to sue in respect to which is derived from it. The cause of action not being barred at the time of the assignment, it can not, under the operation of the statute, be barred in a shorter period than two years, though, applying the statute of limitations of the State, a less period would perfect a bar. Nor can the period of limitation be extended more than two years, though a longer period must have elapsed under the statute of the State to operate a bar. It has no connection with State statutes of limitation, but is a separate, independent statute, enacted in the execution of the power conferred on the Congres " to establish a uniform system of bankruptcy," involving, of necessity, the power to prescribe its own limitation of actions touching the estates, rights, and credits, which are to be administered in its own tribunals, and through its own agencies.—*Peeper v. Canner*, 5 Bank. Reg. 252 ; *Freelander v. Holloman*, 9 *Ib*. 331.

It is argued that the scope and purpose of the bill is merely the enforcement of the pledge of the stock for the payment of the debt, and that to such a suit the statutes of limitation have never been applied, the right of enforcing the pledge continuing until the debt is paid, or until the lapse of time creates a presumption of payment. Statutes of limitation do not, generally, extinguish debts, though barring remedies to enforce them. Legal remedies may, however, be barred, without affecting the right in equity to enforce liens or charges, whether created by contract, or arising by operation of law.—Ang. Lim. § 73. And as to the rights of a pawnor or pawnee, prescription, or statutes of limitation, do not run.—Story on Bailm. § 346. However true this doctrine may be, when applied to the ordinary statutes of limitation, it is forbidden by the terms of the statute we are considering, which operates not only on every character of suit which can be commenced by or against an assignee, but on all rights he can assert, or which can be asserted against him.

It is next insisted, that the case is withdrawn from the operation of the statute, because the bankrupts fraudulently con-

cealed the existence of the debt due them from the associa-
tion, and the pledge of the stock for its payment, and there
was no discovery or knowledge of these facts until the stat-
utory bar was complete. There is no imputation of fraud
or of concealment by the association, or by the parties from
whom relief is now claimed, and no averment of any collu-
sion between them or the association, and the bankrupts.
The fraud of the bankrupts, if it exists, cannot be visited on
the parties now invoking the benefit of the statute, who
claim no right under them, but whose claims are now, and
were when the bankruptcy occurred, adverse and hostile to
them. The reason why courts of equity withdraw frauds
concealed from the operation of statutes of limitation, as
stated by Lord Redesdale, in *Hovenden v. Lord Annesley*, Sch.
& Lef. 634, is, *that the statute ought not, in conscience, to run ;
the conscience of the party being so affected, that he ought not to
be allowed to avail himself of the length of time.* It is the con-
science of the party perpetrating and concealing the fraud,
which is affected, and who is not suffered to invoke the pro-
tection of the statute. Parties not connected or colluding
with him—of themselves innocent, for whose protection stat-
utes of limitation are intended, cannot be debarred of its
benefits by the conduct of strangers, or of those to whom
they bear hostile relations. If it be conceded that the bill
discloses concealment and fraud by the bankrupts, which
would prevent them from pleading the statute, it will not
avail the appellant. Fraud is not imputed to the appellees,
and it is their fraud only which will avoid their reliance upon
the statutory bar.

These were the conclusions of the Chancellor, and the
decree must be affirmed.