# Chadwick *v.* Carson.

*Bill in Equity for Reformation and Foreclosure of Mortgage.*

1. *Statutory protection to judgment creditors and purchasers, against unrecorded mortgages.*—Under the statute declaring unrecorded mortgages void as against purchasers, mortgagees and judgment creditors without notice (Code, §§ 2166-67), judgment creditors are placed on the same footing with purchasers and mortgagees, although they have not acquired a lien by placing an execution in the hands of the sheriff; but only subsequent judgment creditors, like subsequent purchasers, can claim the protection of the statute.

2. *Description of premises conveyed by mortgage.*—When the lands conveyed by mortgage are therein incorrectly or defectively described by government numbers, but correctly by metes and bounds, and also by reference to a former deed, by which the lands can be identified, the latter description will control, and a reformation of the instrument is unnecessary.

3. *Execution of conveyance.*—An instrument which is dated and signed by the grantor, but without attesting witnesses, takes effect and is operative as a conveyance only from the day of its subsequent acknowledgment.

4. *Execution lien, as affected by bankruptcy.*—The lien of an execution in the hands of the sheriff is not, in the absence of fraud or collusion, destroyed or displaced by the subsequent bankruptcy of the defendant.

5. *Conveyances by bankrupt.*—To avoid a mortgage, or other conveyance, executed by a bankrupt within four months before the filing of the petition by or against him (U. S. Rev. Stat. § 5128), he must have the intent thereby "to give a preference," and the grantee must have "reasonable cause to believe" that he is insolvent, and that the conveyance is made "in fraud of the provisions of" the bankrupt law.

6. *Same; proof of notice of insolvency.*—The mortgage being executed on the 1st January, 1873, and the mortgagor being then in fact insolvent, the admitted facts, that it was known in November and December, 1872, in the business community where he lived, that he was embarrassed, "and it became generally known from the 1st to the 10th January, 1873," that he was insolvent, are not sufficient to raise the presumption that the mortgagee had notice of such insolvency on the 1st January, when it does not appear that he resided or was in the county at that time.

APPEAL from the Chancery Court of St. Clair.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed, on the 23d September, 1880, by Shelby W. Chadwick, as trustee under the will

of Mrs. Eliza M. Erwin, deceased, against Thomas K. Carson and others ; and sought the foreclosure of a mortgage, which said Carson had executed to the complainant, and a copy of which was made an exhibit to the bill. An amended bill was afterwards filed, which asked a reformation of the mortgage by correcting an alleged mistake in the description of the lands conveyed, or intended to be conveyed. The mortgage purported to be executed on the 3d October, 1872, and was signed by said Carson and wife; but it was without attesting witnesses, and was admitted to record in St. Clair county, on the 18th January, 1873, on a certificate of acknowledgment made by a notary public in Hale county on the 1st January, 1873. The mortgage was given, as shown by its recitals, to secure the payment of said Carson's promissory note for $2,200, of even date with the mortgage, and payable on the 1st September, 1873, with interest from date. The lands conveyed were thus described in the mortgage : "The south half of section twenty-nine (29), except about fifty-three (53) acres off the west end ; the north-east quarter of the south-east quarter of section twenty-nine (29); the east half of the north-west quarter of section twenty-eight (28) ; the south-west quarter, the south-west quarter of the north-west quarter of section twenty-one, except about three acres off the south-west corner ; the north-west quarter of the north-west quarter of section twenty-eight (28) ; all lying in township fourteen (14), range three (3) east, containing 944 acres, more or less, and bounded as follows : on the east by lands of Ramsey, on the north by lands of Potts, Caldwell and Rowan, on the west by lands of Rowan and Falks, and on the south by the lands of Falks, Keith and Barker ; the same being the lands heretofore conveyed unto the said Thomas K. Carson by John J. Carson, by deed bearing date the 1st day of April, 1871 ; excepting and reserving from the lands above described the lands known as the Ramsey tract, containing 416 acres, more or less."

A decree *pro confesso* was taken against Carson, and he made no defense; the principal controversy being with Mrs. M. A. E. Matthews, who was made a defendant to the bill, and who claimed the lands, or a part thereof, under a purchase at sheriff's sale under execution against said Carson. The sheriff's deed, which was made an exhibit to her answer, showed by its recitals that the execution was issued on certain decrees rendered by the Probate Court of Hale county in April, 1872, against said Carson, and in favor of Margaret Lipscomb and others; that the execution came to the hands of the sheriff of St. Clair on the 28th February, 1873, and that the lands were sold under it on the 2d June, 1873. Mrs. Matthews alleged and insisted, in her answer, that the complainant's mortgage

[Chadwick v. Carson.]

was void and inoperative as to her, not being founded on a debt created at the time it was given, and not having been recorded within three months after its execution ; and she further insisted that the mortgage was fraudulent and void under the provisions of the Bankrupt Act of 1867, and set up the proceedings had in the matter of the adjudication of said Carson as a bankrupt, and the appointment of the complainant as the assignee of his bankrupt estate. The material facts in reference to these matters are stated in the opinion of the court.

On final hearing, on pleadings and proof, the chancellor dismissed the bill ; and his decree is now assigned as error.

INZER & GREENE, and THOS. R. ROULHAC, for appellant.

JAS. E. WEBB, and ELLIS PHELAN, *contra*.

STONE, C. J.—We will first consider this case without any reference to the bankruptcy of Thomas K. Carson ; in other words, as if he had never been adjudged a bankrupt.

In *Wood v. Lake*, 62 Ala. 489, we traced, to some extent, the history of our legislation which provides for the registration of deeds and mortgages, as a means of giving notice of their existence. The purpose and policy of such statutes are, that purchasers and mortgagees shall not be misled or defrauded in acquiring lands, or an interest in them, after they have been made the subject of a prior conveyance or incumbrance. Registration is simply a warning. We showed in that case that, under our older statute, conveyances not recorded within the time prescribed, were inoperative only as against "a subsequent *bona fide* purchaser, or mortgagee for a valuable consideration, not having notice thereof." We showed, further, that the later enactment, first found in the Code of 1852, took a step in advance, and extended protection to judgment creditors, equal to that which had been previously extended to purchasers and mortgagees.—Code of 1876, § 2166.. We felt impelled to this construction by the clear language of the statute. In *Tutwiler v. Montgomery*, 73 Ala. 263, the doctrine was reaffirmed. See, also, *Watt v. Parsons, Ib.* 202.

We think, however, that the protection extended to judgment creditors rests on a similar principle, and is germane to that secured to purchasers without notice. The purchasers who can maintain a right paramount to an unrecorded deed or mortgage, must have purchased subsequently to the making of such deed or mortgage, and must be *bona fide* purchasers, for a valuable consideration, without notice or knowledge of such prior conveyance or incumbrance. This class alone can claim to have been misled by a failure to record. This class alone

[Chadwick v. Carson.]

can be defranded, by a neglect of this statutory duty. For no
other purpose was the statute enacted ; to no other class does
the grantee owe this duty, and only those who are without no-
tice can claim the protection. Hence, if the purchaser be in
possession, this is constructive notice, and equivalent to regis-
tration.—*Burt v. Cassety,* 12 Ala. 734 ; *McCarthy v. Nicrosi,*
72 Ala. 332. The same rule must be applied when the protec-
tion the statute affords is claimed by a judgment creditor. He
must have become such after the conveyance was made, or the
incumbrance created, the failure to record which may mislead
him to the belief that the property is standing open for seizure
under execution upon his judgment.

The decrees in favor of the Lipscomb distributees were ren-
dered long before the mortgage was executed ; and hence,
neither section 2166 of the Code, nor *Wood v. Lake,* exerts
any influence in the decision of this case. So far as this ques-
tion is concerned, the mortgage dominates the execution lien.

There are, in the mortgage, three modes adopted for de-
scribing the lands intended to be conveyed ; by government-
survey numbers, by metes and bounds, and by reference to the
deed which vested the title in the mortgagor. The govern-
ment-survey numbers are incorrect, except as to forty acres of
the land. The last two modes of description identify the land.
In *Clements v. Pearce,* 63 Ala. 284, this court said : "In
grants and conveyances, there is often an incongruity between
courses and distances as expressed, and monuments, or natural
objects, capable of clear, accurate designation and description,
such as marked trees, mountains, water-courses ; and these
control, because the natural presumption is, that the parties
are less liable to be mistaken about them, than about courses
or distances. The lands [in controversy in that case] are
doubtless inaccurately described, if we look only to the num-
bers and quantity as collected from the government survey, by
which to identify them. This description, however, is accom-
panied with the further description, that a part of them lies
west of Eniptochopko creek, extending to the agreed line
between John Kerley and John W. Bishop, belonging to the
grantor, a further part of them lying east of that agreed line ;
and that the whole tract conveyed was purchased by the
grantor of William L. Kerley. The intent to pass the lines
[*lands?*] lying east of the agreed line, and west of the creek
to that line, and the entire tract purchased by the grantor of
Kerley, is clearly expressed. Parol evidence of the exact sit-
uation and location of the lands, and of their identity, as
shown by these descriptions, was admissible, to relieve and
cure whatever indefiniteness and discrepancy there may be
in the other descriptions." In *Doe, ex dem. Saltonstall v,*

[Chadwick v. Carson.]

*Riley*, 28 Ala. 164, 182, this court said : "Although the land is described inartificially, and somewhat differently in each attempt at the description of it, still, we think enough appears to enable the court to see that the land sold and conveyed was comprehended in the description."—*McIver v. Walker*, 9 Cranch, 173 ; *Williams v. Hatch*, 38 Ala. 338. We thus reach the conclusion, that the lands are sufficiently described in the mortgage, without the aid of reformation.—*Hurt v. Blount*, 63 Ala. 327.

The face date of the mortgage is October 3, 1872. It has no subscribing witnesses, and remained without certificate of acknowledgment until January 1, 1873. During that time, it was entirely inoperative as a conveyance. It wanted an indispensable element of execution, and was of no greater force than a deed signed but not delivered.—*Hendon v. White*, 52 Ala. 597 ; *Lord v. Folmar*, 57 Ala. 615 ; *Stubbs v. Kohn*, 64 Ala. 187. The mortgage in this case must be held to have been executed January 1, 1873,—the date which the certificate of acknowledgment bears.

The decrees under which Mrs. Matthews traces title were rendered against Thomas K. Carson, in Hale Probate Court, May 6, 1872. The lands in controversy lie in St. Clair county. Some money was made in Hale county, on executions issued on these decrees ; and on 28th February, 1873, *alias* executions were placed in the hands of the sheriff of St. Clair county, commanding him to make the residue of the money. These were the first executions issued to St. Clair county, and under them the sheriff levied on the lands involved in this suit, sold them, and Mrs. Matthews became the purchaser, and received the sheriff's deed. No question is raised on the *bona fides* of these probate decrees, nor of the indebtedness on which they were rendered. Thomas K. Carson was decreed an involuntarily bankrupt, March 28, 1873, and in April, same year, Shelby W. Chadwick, complainant in this suit, was appointed assignee of his bankrupt estate. As such assignee, he has never taken any steps in relation to this land. There can be no question that, by placing these executions in the hands of the St. Clair sheriff, a lien was created, which Carson's subsequent bankruptcy, in the absence of fraud or collusion, would neither override nor displace.—*Crow v. Reid*, 57 Ala. 281 ; *Sheffey v. Davis*, 60 Ala. 548 ; *Newlin v. McAfee*, 64 Ala. 357 ; *Moses v. St. Paul*, 67 Ala. 168. Mrs. Matthews acquired a good title by the sheriff's deed, unless Chadwick's mortgage will prevail over it.

We have shown above that complainant's mortgage must be considered as executed on the first day of January, 1873. Till then it was incomplete. On that day it became an executed

mortgage, by the certificate of acknowledgment. Its consideration, as recited, is admitted, and it was filed for record and recorded in the probate office of St. Clair county, January 18, 1873. This was more than a month before the executions under which Mrs. Matthews claims were placed in the hands of the sheriff, and hence created an older lien than the executions, if there is nothing in the transaction to break its force.

It is contended for appellee, Mrs. Matthews, that Chadwick's mortgage is invalid, for the following alleged reasons: That it was executed less than four months before Carson was adjudged a bankrupt; that Carson was insolvent when he executed it, his insolvency was notorious, and that its aim and purpose were to give Chadwick a preference, in fraud of the bankrupt law; that Chadwick, being his assignee, was in duty bound to have the mortgage set aside, and, failing to do so, he will not be allowed to take advantage of his own wrong, and reap a profit from his own dereliction of duty.

The provisions of the bankrupt statute bearing on this question were originally contained in sections 35-39 of the act approved March 2, 1867. They are now condensed in section 5128, Revised Statutes, in the following language: "If any person, being insolvent, or in contemplation of insolvency, within four months before filing the petition for or against him, with a view to give a preference to any creditor or person having a claim against him, . . makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer, or conveyance, . . having reasonable cause to believe such person is insolvent, and that such . . payment, pledge, assignment, or conveyance is made in fraud of the provisions of this title, the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it." To come within this statute, in making the payment, pledge, or conveyance, the grantor must have the intent "to give a preference," and the grantee who receives the conveyance must have "reasonable cause to believe" the payor, or grantor, is insolvent, and that the payment or conveyance is made "in fraud of the provisions of" the bankrupt law. These thoughts naturally suggest themselves, without reference to any rulings that have been made upon this statute. In *Wilson v. City Bank*, 17 Wall. 473, the unanimous opinion of the court was pronounced by Justice Miller, in his accustomed, forcible language. He said, the act "must be accompanied with an intent. In section thirty-five, it is to give a preference to a creditor. In section thirty-nine, it must be to give a preference to a creditor, or to defeat or delay the opera-

tion of the Bankrupt Act. In both there must be the positive purpose of doing an act forbidden by that statute, and the thing described must be done in the promotion of this unlawful purpose. . . It is not pretended that any positive evidence exists of a wish or design on their part to give this creditor a preference, or oppose or delay the operation of the Bankrupt Act." So, in the case of *Mays v. Fritton*, 20 Wall. 414, the opinion of the court was again unanimous. The court said : "To authorize the assignee to recover the money or property under this section, it is necessary that he should establish the act of the bankrupt, not only of which he complains, but also that it was done with a view to give a preference over other creditors, and that the other party to the transaction had reasonable cause to believe that such person was insolvent."—Bump on Bankruptcy, 10 ed., 810, 811. As to "reasonable cause to believe," see *Ib.* 829 *et seq.*

The testimony in this record is not very full. Except in the matter of showing that the lands are correctly described by metes and bounds, and in the deed from J. J. Carson to T. K. Carson, and except the record and documentary evidence, the entire facts relied on are shown in an agreement signed by counsel. All that bears on the question of Carson's financial condition, and his intention in making the mortgage, and of Chadwick's "reasonable cause to believe" Carson was insolvent January 1, 1873, is embraced in the following paragraph : "In the months of November and December, 1872, and thereafter, it was known to the business community in which T. K. Carson lived, and in which T. K. Carson & Co. did business, that said Carson and said firm were embarrassed in business ; and from the first to the tenth of January, 1873, it became generally known that they were insolvent. That prior to November, 1872, there was no question as to the solvency of T. K. Carson, nor of T. K. Carson & Co. They were reputed good in their community. S. W. Chadwick [complainant] is a nephew of Mrs. T. K. Carson, and has been on intimate terms with T. K. Carson at all times both before and since 1873. He is a cousin of Shelby C. Carson, and also of the wife of R. B. Douglass," members of the firm of T. K. Carson & Co. T. K. Carson resided in Greensboro, Hale county, and the firm of T. K. Carson & Co. had a mercantile establishment in Greensboro, and one in St. Clair county ; probably one hundred miles apart. It is not shown where S. W. Chadwick lived, except by the admitted averment of the bill, that when it was filed, he was a resident of Hale county, Alabama ; and it is not shown where he resided, nor where he was, from the first to the tenth of January, 1873.

[Chadwick v. Carson.]

It may be conceded, for the purposes of this case, that when the mortgage was executed—January 1, 1873—T. K. Carson was insolvent, and intended, by the mortgage, to secure a preference to Chadwick. When a particular result naturally follows from the doing of an act, the actor is presumed to intend that result. Is there any testimony to support a presumption that Chadwick, when the mortgage was acknowledged, had cause to believe Carson was insolvent? The acknowledgment was January 1, 1873. If it be conceded that when any fact becomes "generally known," persons in the community will be presumed to have knowledge of it, or to have cause for believing it, the agreed facts, copied above, fall far short of meeting the requirements of the rule. First, a sliding scale is given, covering a period of ten days, within which Carson's insolvency became generally known. There is as much ground for the inference that this material fact became generally known only on the tenth, or on the fifth, as that it was so known on the first. Adopting the usual rule of taking the mean, in findings on such testimony, we would conclude it became generally known on the fifth. Conceding to this presumption the certainty of knowledge, it could not furnish cause for believing, five days before that knowledge was acquired, that the insolvency did in fact exist. Second, it is not shown that Chadwick was, at the time, in the community, in which Carson's insolvency became generally known.

The present record fails to show any ground for setting aside Carson's mortgage to Chadwick, and hence no presumption arises against the latter, for failing to make the attempt. We will not, therefore, inquire what would have been our ruling, had we found that when Chadwick took the mortgage, he had cause to believe Carson was insolvent.

The decree of the chancellor is reversed; and this court proceeding to render the decree the chancellor should have rendered, it is ordered and decreed, that the complainant is entitled to relief, and to have a foreclosure of his mortgage; the proceeds of the lands, after satisfying costs and the mortgage lien, should there be a surplus, to be paid to Mrs. Matthews, the owner of the equity of redemption. It is referred to the register to take an account, and report to the Chancery Court the amount due on the mortgage debt, with interest to the coming in of the report. He will hear legal testimony, if offered. All other questions are reserved for consideration by the chancellor.

Reversed, rendered, and remanded.