Plaintiff below appeals the granting of summary judgment for the defendants by the trial court on the ground the recovery was barred by the four-year statute of limitations of the Medical Liability Act. The dispositive issue here is whether fraudulent concealment tolls the operation of the Medical Liability Act thereby permitting an action otherwise permitted by the statute to be brought more than four years after the alleged act of malpractice.
Melinda Bowlin Horn, appellant, was at the time of her appendectomy on April 21, 1971, an unmarried 13-year-old. Her physician, Dr. E.H. Roberts, allowed a piece of a sweged needle that broke off during the operation to remain embedded in the thick wall of the girl's abdomen. The "Report of Operation" describes the incident as follows: "In closing the initial oblique muscle, closing loosely to the internal oblique, a tiny bit of the sweged needle was lost in it and rather than losing time for this particular incident, the operation was continued. . . ." Although Dr. Roberts's "Progress Notes" as well as the "Report of Operation" indicated that the broken portion of the needle was left in the incision and that the mother and father had been informed of its presence, the appellant and her parents maintain that they were never informed about the needle, but instead were told that the operation was successful. Dr. Roberts stated in the interrogatories that he did not recall whether he had in fact informed the parents about the broken needle, because the operation had taken place more than nine years before. *Page 1067 
About a year following surgery, the appellant began experiencing abdominal pains. She went to two different physicians on separate occasions for treatment. One physician diagnosed the persistent abdominal pain to be caused by nervousness, while the other physician informed her that the pain was caused by an ulcer. Appellant never informed Dr. Roberts of her persistent abdominal pain and in fact was never again treated by him after her discharge from the hospital following the appendectomy.
In February 1979, the appellant sought treatment from physicians in Birmingham. X-rays revealed the presence of the needle remnant at the site of the appendectomy. On March 9, 1979, a short time following surgery to remove the needle remnant, appellant filed a medical malpractice suit against Citizens Hospital and Dr. Roberts in the Circuit Court of Talladega County. The trial court granted the appellee's motions for summary judgment on March 17, 1982, on the ground that the appellant's claim for recovery was barred by the applicable statute of limitations for malpractice found in Code 1975, § 6-5-482. From this order, appellant appeals.
 I
This Court has not previously addressed the issue of fraudulent concealment as it applies to the Medical Liability Act. See Code 1975, §§ 6-5-480 through 6-5-488. There is no dispute by any of the parties that the action made the basis of this appeal is governed by the Medical Liability Act. This act contains its own limitations as to the time for the commencement of an action. Section 6-5-482 (a) of the act reads:
 "All actions against physicians, surgeons, dentists, medical institutions or other health care providers for liability, error, mistake or failure to cure, whether based on contract or tort, must be commenced within two years next after the act or omission or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act; except, that an error, mistake, act, omission or failure to cure giving rise to a claim which occurred before September 23, 1975, shall not in any event be barred until the expiration of one year from such date."
In Street v. City of Anniston, 381 So.2d 26 (Ala. 1980), we remarked with specific reference to this section that:
 "[It] is similarly titled a statute of limitations, and commences the running of the statute from the time of the act or omission giving rise to the cause of action. It does not, however, act as a grant of immunity; our case law has established that, in malpractice actions, legal injury occurs at the time of the negligent act or omission, whether or not the injury is or could be discovered within the statutory period. Garrett v. Raytheon [368 So.2d 516
(Ala. 1979)], Hudson v. Moore, 239 Ala. 130, 194 So. 147 (1940), Sellers v. Edwards, 289 Ala. 2, 265 So.2d 438 (1972). Thus, the Medical Liability Act contains a traditional statute of limitations, one which commences the running of the statute from the accrual of the cause of action, and is not subject to constitutional infirmity under § 45."
381 So.2d at 31. See also Ramey v. Guyton, 394 So.2d 2 (Ala. 1980).
The Court discussed the origin of the principle of fraudulent concealment in Porter v. Smith, 65 Ala. 169 (1880).
 ". . . It is known to have been the long-settled doctrine of courts of equity, that if fraud has been concealed by a party, against whom there is a cause of action, the statute of limitations does not commence to run, until the fraud has been discovered, or until the party aggrieved shall have had reasonable opportunity afforded him for discovering it. *Page 1068 
— Angell on Lim. § 183; Snodgrass v. Branch Bank at Decatur, 25 Ala. 161; Coster v. Murray, 5 John. (N.Y.) Ch. 522. The reason given by Lord Redesdale, in Hovenden v. Lord Annesley (2 Sch. 
Lef. 634), was, that the conscience of the party being so affected, he ought not to be allowed to avail himself of the lapse of time. The first authoritative application of this principle to courts of law found encouragement, if not origin, in the apparent dictum of Lord Mansfield, uttered in Bree v. Holbreck, Doug. 654, that `there may be cases which fraud will take out of the statute of limitations.' And while the soundness of the doctrine, as applicable to courts of law, has been denied in some of the States, including New York, Virginia, and North Carolina, we think the weight of authority in this country clearly supports the affirmative. — Angell on Lim. § 186; Wear v. Skinner, 24 Amer.Rep. 517 (46 Md. 257)."
65 Ala. at 172. Section 6-2-3, as appellant suggests, is the embodiment of this equitable notion and it reads:
 "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his action."
Appellant notes that Garrett v. Raytheon Co., Inc.,368 So.2d 516, 521 (Ala. 1979), is a reaffirmation by this Court that "fraudulent concealment by a defendant tolls the running of the statute until the tort injury is discovered or could have been discovered by due diligence." Additionally, the appellant maintains that the facts of this case present a classic illustration of a confidential relationship and that where this sort of confidential relationship exists, as between a physician and the patient, the law imposes a strong duty on the physician to disclose facts of medical significance to the patient. Appellant cites the following cases as representing this obligation to disclose where confidential relations exist,Jefferson County Truck Growers Ass'n v. Tanner, 341 So.2d 485
(Ala. 1977); Tonsmeire v. Tonsmeire, 285 Ala. 454,233 So.2d 465 (1970); Metropolitan Life Ins. Co. v. James, 238 Ala. 337,191 So. 352 (1939); Brasher v. First National Bank ofBirmingham, 232 Ala. 340, 168 So. 42 (1936). Section 6-5-102 is likewise cited by appellant as imposing an obligation to disclose in this case. This section reads: "[S]uppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." See Harrell v.Dodson, 398 So.2d 272, 276 (Ala. 1981). Consequently, the appellant urges this Court to incorporate the principle of fraudulent concealment into the effects of § 6-5-482 by engrafting § 6-2-3 or § 6-5-102.
Some courts in other jurisdictions appear to have adopted the view that if a surgeon or other medical practitioner obtains actual knowledge that he has negligently left a foreign object in the body of a patient then the practitioner has a duty to disclose the object's presence to the patient. These courts apparently treat the failure of the practitioner to disclose such a condition as a fraudulent concealment which tolls the limitations period until the patient discovers, or, by the use of reasonable diligence, should have discovered, the presence of the object. Annot., 70 A.L.R.3d 7 (1976).
The legislature first enacted a medical malpractice statute of limitations in 1953. Act of Sept. 17, 1953, No. 766, 1953 Ala. Acts 1027 (codified at Ala. Code Tit. 7 § 25 (1) (1940)). Act No. 766 provided:
 "Section 1. All actions against physicians and surgeons, and dentists for malpractice, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act or omission or failure giving rise to the cause of action, and not afterwards. Provided that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date *Page 1069 
of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier, provided further that in no event may the action be commenced more than six years after such act.
 "Section 2. Section 1 of this act shall be subject to all existing provisions of law relating to the computation of statutory periods of limitation for the commencement of actions; namely, Title 7, Sections 18, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 40, 42, 43, 44, 47, 48 of the Code of 1940."
This act was the percursor to the statute of limitations provision enacted in the Medical Liability Act by the legislature in 1975. Act of Sept. 23, 1975, No. 513, § 4, 1975 Ala. Acts 1149, 1150 (codified at Ala. Code § 6-5-482 (1975)).
Prior to the enactment of Act No. 766, the issue of fraudulent concealment was raised in the case of Hudson v.Moore, 239 Ala. 130, 194 So. 147 (1940). The physician was sued by the plaintiff in the Hudson case for leaving a gauze sponge in the plaintiff's body. The operation occurred in 1923 and the suit was brought in 1938. The sole inquiry by the Court inHudson was whether the facts as set out by the plaintiff prevented the running of the statute until the discovery of the cause of action which was alleged to have been within 12 months before the suit was brought. In Hudson this Court noted:
 "Fraudulent concealment implies knowledge of the facts concealed. This is settled in our decisions as elsewhere. Jordan Sons v. Pickett, 78 Ala. 331; Southern Land Development Co. v. Meyer, 230 Ala. 40, 159 So. 245; Griel v. Lomax, 89 Ala. 420, 6 So. 741; Lovell v. Smith et al., 232 Ala. 626, 169 So. 280; Metropolitan Life Ins. Co. v. James, 238 Ala. 337, 191 So. 352, 355. . . .
 "Our statute, Code [1923], 8966, postponing the running of the statute in cases of fraud, reads: `In actions seeking relief on the ground of fraud where the statute has created a bar, the cause of action must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have one year within which to prosecute his suit.'
 "While the statute is usually applicable to cases wherein fraud is the basis of the cause of action, it is the settled construction that its purpose is to make available at law the rule theretofore prevailing in equity; and applies to a fraudulent concealment of the existence of a cause of action from the party in whose favor the cause of action exists. A party cannot profit by his own wrong in concealing a cause of action against himself until barred by limitation. The statute of limitations cannot be converted into an instrument of fraud. Moses et al. v. St. Paul, et al., 67 Ala. 168; Peters Mineral Land Co. v. Hooper, supra [208 Ala. 324, 94 So. 606]; Roquemore v. Sovereign Camp, W.O.W., 226 Ala. 279, 146 So. 619.
 "Where confidential relations exist, as between physician and patient, the duty to disclose may render silence fraudulent, but knowledge of the facts is a necessary element of fraudulent concealment.
 "In certain pleadings, designed to excuse delay in bringing the suit, plaintiff seeks to invoke actual fraudulent misrepresentation, defined by statute in these words: `Misrepresentations of a material fact, made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently, and acted on by the opposite party, constitute legal fraud.' Code 1923, § 8049."
239 Ala. at 132-133, 194 So. at 148-149. The trial court, inHudson sustained the defendant's demurrers and this Court affirmed on the ground that the plaintiff failed to aver the defendant-physician knew he left the sponge in the operation wound. Section 8966, Code 1940, is the forerunner to § 6-2-3, which the appellant urges the Court to apply to the facts in this case.
Although this Court has not directly addressed the principle of fraudulent concealment as it applies to the Medical Liability Act, it was superficially raised in Miller v. *Page 1070 Mobile County Board of Health, 409 So.2d 420 (Ala. 1981). InMiller, the plaintiff alleged fraudulent concealment by the manufacturer of possible side effects and dangers of an intra-uterine device. With regard to that allegation, this Court observed:
 ". . . The Board of Health contends that the statute of limitations applicable to actions against medical institutions can in no event be commenced more than four years after the injury occurs. See
Code 1975, § 6-5-482. We do not need to address this issue since it is not essential to the resolution of this action. Even if § 6-2-3
extended the statute of limitations for actions against medical institutions, the complaint failed to allege fraudulent concealment sufficiently. Thus, even if the time for bringing an action under § 6-5-482 could be extended beyond four years, the complaint does not state sufficient grounds for such an extension under § 6-2-3."
409 So.2d at 422. This statement by the Court as to the possible extension under § 6-2-3 of the four-year statute of limitations of the Medical Liability Act is merely illustrative, and is not indicative of this Court's predisposition in cases involving alleged fraudulent concealment.
 II
We turn now to the construction of § 6-5-482 and whether fraudulent concealment tolls the statute of limitations in medical malpractice suits, thereby making § 6-2-3 the appropriate limitations period, or whether § 6-5-482 creates an absolute bar to all medical malpractice claims which are brought more than four years after the cause of action accrues.
The construction of subsection (b) of § 6-5-482 is determinative of the outcome of this case. Section 6-5-482 (b) reads:
 "Subsection (a) of this section shall be subject to all existing provisions of law relating to the computation of statutory periods of limitation for the commencement of actions, namely, sections 6-2-1, 6-2-2, 6-2-3, 6-2-5, 6-2-6, 6-2-8, 6-2-9, 6-2-10, 6-2-13, 6-2-15, 6-2-16, 6-2-17, 6-2-30 and 6-2-39; provided, that notwithstanding any provisions of such sections, no action shall be commenced more than four years after the act, omission or failure complained of; except, that in the case of a minor under four years of age, such minor shall have until his eighth birthday to commence such action."
The touchstone of legislative construction is to ascertain and effectuate the intent of the legislature as expressed in the statute. See, e.g., Darks Dairy, Inc. v. Alabama DairyCommission, 367 So.2d 1378, 1380 (Ala. 1979). Moreover, in determining legislative intent, courts may look to the history of the statute and the purpose sought to be accomplished. Statev. T.R. Miller Mill Co., 272 Ala. 135, 139, 130 So.2d 185, 188
(1961). The forerunner of § 6-5-482 (b), § 2 of Act No. 766, provided that actions for medical malpractice were "subject to all existing provisions of law relating to the computation of statutory periods of limitation for the commencement of actions; namely Title 7, Sections 18, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 40, 42, 43, 44, 47, 48 of the Code of 1940." When the Medical Malpractice Act was enacted in 1975, the legislature specifically added the proviso stating ". . . that notwithstanding any provisions of such sections, no actionshall be commenced more than four years after the act, omissionor failure complained of. . . ." (Emphasis added.) The appropriate office of a proviso is to restrain or modify the enacting clause, or preceding matter, and should be so confined, unless it is apparent it should apply to some other matter. Touart v. American Cyanamid Co., 250 Ala. 551, 555,35 So.2d 484, 486 (1948). While it is likely that fraudulent concealment would have tolled the operation of the statute of limitations under the terms of Act No. 766, thus making the one-year discovery rule the applicable period in which to commence an action (Title 7, § 42 being the predecessor to §6-2-3), we construe § 6-5-482 (b) and the proviso therein as barring recovery for all medical malpractice actions commenced more than four years after the wrongful act or omission producing the injury. *Page 1071 
In shortening the statute of limitations and barring all medical malpractice actions after four years, the legislature, as did other state legislatures, responded to a nationwide medical malpractice crisis caused by proliferating malpractice claims and sizeable malpractice verdicts. The policy considerations of the Medical Liability Act are expressed in the legislation itself. Section 2 of Act No. 513 reads:
 "It is hereby declared by the Legislature of the State of Alabama that the availability of medical liability insurance at reasonable rates for the medical profession, medical institutions, and other health care providers is essential to provide adequate health services to the people of Alabama, and without such insurance, medical services by the medical profession may be curtailed, and that while the need for such insurance is increasing, availability is limited and likely to become increasingly so, unless remedial legislation is enacted. The Legislature further finds and declares that by reason of complicated and highly technical medical concepts, and the existence of sophisticated medical techniques, decisions with respect to optional procedures of diagnosis and treatment have become increasingly complex and are necessarily made on the basis of professional judgment, on which opinions may and often will reasonably vary. It is the purpose of this act to insure that the citizens of the State of Alabama are able to receive necessary health services by providing an environment in which the medical profession can be assured of medical liability insurance coverage and be afforded reasonable protection against personal liability for consequences proximately resulting from decisions with respect to diagnosis and treatment arrived at in the bona fide exercise of professional judgment."
1975 Ala. Acts 1149.
The prescription of a reasonable date and time for bringing a particular cause of action is within the inherent power of the legislature. The Court has held:
 "It is the prerogative of the legislature to fix the time in which causes of action must be commenced. A plaintiff's delay in asserting a right within the time prescribed by the legislature may be fatal to his suit, and no court will excuse his delay if the time provided is reasonable, reasonableness being primarily a legislative matter."
Plant v. R.L. Reid, 294 Ala. 155, 160, 313 So.2d 518, 522
(1975). See also Sellers v. Edwards, 289 Ala. 2, 265 So.2d 438
(1972).
In view of the policy expressed by the legislature as set out in the Medical Liability Act, and in view of the fact that the reasonableness of the period of time allowed a party to bring a suit is primarily a legislative matter, we determine that the four-year limitations period set out in the act is reasonable.
Furthermore, our research indicates that each of our bordering and several of our neighboring states have enacted statutes which control the commencement of malpractice actions.[1] This research shows that of these eight states, all but two, Kentucky and Mississippi, have special provisions for either fraudulent concealment or foreign objects left in a patient's body or a combination of both. The legislature, as it has the authority to do, could have determined that the four-year limitations period was reasonable because it believed an injury sustained by a patient caused by an allegedly negligent act of a physician, irrespective of fraudulent concealment, would generally *Page 1072 
become manifest within four years. Indeed, the facts of this case suggest that despite the two misdiagnoses by the two physicians as to the cause of appellant's pain, the needle remnant's presence was nevertheless manifest within the four-year period. Hence, we conclude that had the legislature intended fraudulent concealment or the act of leaving foreign objects in a patient's body to lengthen the period of commencing medical malpractice actions, the legislature could have included a specific provision in the Medical Liability Act to accomplish that purpose.
As for appellant's final contention that the Medical Liability Act is unconstitutional as an arbitrary classification, we note:
 "A state is not prohibited upon constitutional grounds from making classifications of persons and objects, or from passing laws which apply only to persons within a designated class. Classification is an inherent power of the Legislature but it must not be arbitrary or unreasonable. In order to justify interference by the courts with the wide discretion which the Legislature has in such matters, it should appear that the interests of those generally affected by the act, as distinguished from those of a particular class, require such interference. In Re: Opinion of the Justices, 252 Ala. 559, 561, 42 So.2d 56 (1949)."
Sellers v. Edwards, 289 Ala. 2, 6, 265 So.2d 438, 440 (1972).
Appellant is likewise directed to our holding in Reese v.Rankin Fite Memorial Hospital, 403 So.2d 158 (Ala. 1981), from which we take the following quotation:
 "We note that a number of other states passed similar legislation during this period. While we might have drafted a different act, we cannot substitute our judgment for that of the legislative branch, whose enactments come to us clothed with a presumption of validity. Alabama State Federation of Labor v. McAdory, 246 Ala. 1, 18 So.2d 810 (1944), stated this principle as follows:
 "`At the outset reference may be made, as is often done, to the principles by which courts are guided when it is sought to strike down as violative of the constitution a legislative act. Uniformly, the courts recognize that this power is a delicate one, and to be used with great caution. It should be borne in mind, also, that legislative power is not derived either from the state or federal constitutions. These instruments are only limitations upon the power. Apart from limitations imposed by these fundamental charters of government, the power of the legislature has no bounds and is as plenary as that of the British Parliament. It follows that, in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law. State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487, 121 A.L.R. 283.
 "`Another principle which is recognized with practical unanimity, and leading to the same end, is that the courts do not hold statutes invalid because they think there are elements therein which are violative of natural justice or in conflict with the court's notions of natural, social, or political rights of the citizen, not guaranteed by the constitution itself. Nor even if the courts think the act is harsh or in some degree unfair, and presents chances for abuse, or is of doubtful propriety. All of these questions of propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern. This principle is embraced within the simple statement that the only question for the *Page 1073 
court to decide is one of power, not of expediency or wisdom.'
246 Ala. at 9-10, 18 So.2d 810.
 "We hold that the Medical Liability Act does not offend either the due process or the equal protection provisions of the state or federal constitutions."
(Emphasis added.)
403 So.2d at 161-162.
Therefore, summary judgment was properly granted by the trial court as to both appellants on the ground that this action is barred by the four-year provision of § 6-5-482.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.
[1] Arkansas, See Ark.Stat.Ann. § 34-2616 (1981 Supp.);
Florida, See, West's F.S.A. § 95.11 (4)(b) (1982);
Georgia, See, Ga. Code 9-3-71 and 9-3-72 (1981);
Kentucky, See Ky.Rev.Stat. § 413.140 (2) (1982 Supp.);
Mississippi, See Miss. Code Ann. § 15-1-36 (1982 Supp.);
North Carolina, See N.C.Gen.Stat. § 1-15 (c) (1981 Supp.);
South Carolina, See S.C. Code Ann. § 15-3-545 (Law.Coop. 1981 Supp.);
Tennessee, See Tenn. Code Ann. § 29-26-116 (1955).