461 So.2d 775 (1984)
Lavoid D. JOHNSON and Pauline Johnson
v.
James G. McMURRAY, et al.
82-413.
Supreme Court of Alabama.
September 7, 1984.
As Modified on Denial of Rehearing November 9, 1984.
*776 Joseph M. Cloud of Cloud & Cloud, and Robert H. Ford of Brinkley & Ford, Huntsville, for appellants.
Harold F. Herring, H. Harold Stephens, and William W. Sanderson, Jr. of Lanier, Shaver & Herring, Huntsville, for appellee James G. McMurray.
John S. Key of Eyster, Key, Tubb, Weaver & Roth, Decatur, for appellee James H. Griffith, M.D.
Michael A. Worel of Emond & Vines, Birmingham, for amicus curiae The Alabama Trial Lawyers Ass'n.
JONES, Justice.
This is a medical malpractice case. Plaintiffs/Appellants Lavoid D. and Pauline Johnson appeal from a judgment for Defendants Dr. James G. McMurray and Dr. Thomas G. Griffith, following a jury verdict. We reverse and remand.

FACTS
In May 1979, Lavoid Johnson, 68 years old, was referred by his family physician to Dr. James G. McMurray, a Huntsville urologist, for treatment of heart complications, emphysema, and swelling of the ankles, legs, and feet. After tests were performed, Mr. Johnson's condition was diagnosed as a benign enlarged prostate, for which he was hospitalized. Upon removal of the prostate tissue and further examination, Dr. McMurray discovered "two nodules of well-differentiated carcinoma," or cancer.
*777 During the lymph node surgery, a 4" × 4" surgical sponge was left in Mr. Johnson's lower abdomen. On August 28, 1979, Dr. McMurray advised Mr. Johnson of the presence of the sponge, as well as the need for its immediate removal. Because he objected to Dr. McMurray's participation in the sponge removal surgery, Mr. Johnson requested, through his lawyer, that Dr. McMurray recommend other surgeons for the surgery. Dr. McMurray did so, and Mr. Johnson chose Dr. Thomas Griffith, a Huntsville urologist.
The testimony is in conflict as to the extent of Dr. McMurray's involvement in the operation to remove the sponge. Mrs. Johnson testified that she told Dr. McMurray on three separate occasions that he was not to participate in any way in her husband's surgery. Dr. Griffith testified that he told the Johnsons that he would not perform the operation unless Dr. McMurray was present during the surgery for assistance, and that the Johnsons did not object to his presence. According to the hospital report, Dr. McMurray signed as chief surgeon for the sponge removal operation. Also, Dr. McMurray's name appears on the operating room registry and he dictated the operating report. Additionally, the record is clear that Mr. Johnson refused to sign a consent form with Dr. McMurray's name on it, but did sign the form with Dr. Griffith's name designated as the surgeon. The form reads, in pertinent part, as follows:
 "1. I, Lavoid D. Johnson, the undersigned,
 (Patient, or nearest relative)
 authorize Dr. T. Griffith
 (Physician)
and his assistant to perform, under anesthetic deemed advisable, the operation
stated above on Lavoid D. Johnson,
 (Name of patient)
and also, to perform such additional procedures as may be considered therapeutically necessary, based upon the findings in the course of the operation. Any tissue surgically removed may be disposed of by the physician, or assisting physician, or the hospital, in accordance with its accustomed practice.
 "(Signed) Lavoid D. Johnson"
Shortly after the sponge removal surgery, Mr. Johnson was released from the hospital. He did not see Dr. Griffith after discharge, but did see Dr. McMurray. Throughout the remainder of 1979, he suffered from kidney infections and swelling in his legs. Upon his readmission to the hospital in December, it was discovered that the blood supply in his leg had been restricted, necessitating the amputation of his leg on January 1980.

STATEMENT OF THE CASE
The Johnsons filed suit against Dr. McMurray (later amended to include Dr. Griffith) alleging fraud, conspiracy to commit fraud, assault and battery, conspiracy to commit assault and battery, negligence, and wantonness.[1] The trial court, at the conclusion of all the evidence, directed a verdict as to both Defendants on the Plaintiffs' claims of fraud and conspiracy to commit fraud. The jury returned a verdict in favor of both Defendants on the remaining claims. This appeal followed.

THE DISPOSITIVE ISSUE
The primary issue presented on appeal is whether the trial court erred in directing a verdict for Defendants on the claims of fraud and conspiracy to commit fraud.[2]
*778 Appellants' claim of error on this issue is grounded on Code 1975, § 6-5-102, which provides:
"Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."

DECISION
Although the "Alabama Medical Liability Act" does not explicitly include fraudulent concealment as a cause of action, this Court has recognized such a cause of action against a physician and hospital in Horn v. Citizens Hospital, 425 So.2d 1065 (Ala.1982). The plaintiff in Horn began experiencing abdominal pain in 1972one year following her appendectomy. It was not until 1979 that X-rays revealed the presence of a needle remnant at the site of the appendectomy. The trial court granted the defendants' motion for summary judgment based solely on the statute of limitations defense. This Court affirmed, reasoning, under the facts of that case, that § 6-5-482(b), by its own terms, had pre-empted the fraudulent concealment statute of limitations and set the outer limits for the commencement of the action at four years.
Nevertheless, in its rationale for so holding, the Horn Court recognized fraudulent concealment as the basis for a medical malpractice context cause of action. Moreover, we find no justification for not following the traditional rules of statutory construction, which mandate that the two statutes§ 6-5-102 and § 6-5-482be construed in pari materia. Certainly, the holding in Horn that the express wording of § 6-5-482 precluded the operation of § 6-5-102 as against the contention that the latter statute extended the statute of limitationsdoes not suggest that the medical malpractice statute has abrogated fraudulent concealment as the basis for a cause of action. To the same extent, see Benefield v. F. Hood Craddock Clinic, 456 So.2d 52 (Ala.1984).[3]
Although silence ordinarily does not constitute fraud, in dealings between persons standing in a confidential relationship, the law, as codified in § 6-5-102, imposes an obligation on the part of the one to safeguard the interests of the other; and the withholding of material facts is a breach of that duty and constitutes actionable fraud. Chapman v. Rivers Construction Co., 284 Ala. 633, 227 So.2d 403 (1969).
This Court has determined that the relationship between a doctor and his patient is a "confidential" one. Hudson v. Moore, 239 Ala. 130, 194 So. 147 (1940). The policy considerations for confidentiality in the doctor/patient relationship are grounded in the necessity on the part of the patient to fully disclose to his doctor all information essential to the patient's proper diagnosis and treatment, and in the corresponding duty on the part of the doctor to fully disclose to the patient facts necessary to enable the patient to intelligently exercise his right to control, to the extent feasible, his own health care. The Johnsons ground their claim for fraudulent suppression on the doctors' failure to inform them that Dr. McMurray would perform, or participate in, the sponge removal operation on Mr. Johnson. They point to the tendencies of the evidence indicating that Dr. Griffith knew that Mr. Johnson did not want Dr. McMurray to take any part in the second operation; and, yet, that at all times, both doctors intended for Dr. McMurray to participate in the surgery.
Additionally, they contend that the jury could reasonably infer from the evidence that Dr. McMurray failed to inform the Johnsons that he would be participating in *779 the surgery, knowing that the Johnsons were adamant about his nonparticipation. At the same time, contend the Johnsons, Dr. McMurray intended to participate in the operation, with or without Mr. Johnson's consent; and that if he could not convince Mr. Johnson to sign the consent form with his name on it, then he would convince Mr. Johnson to sign the form with Dr. Griffith's name on it, knowing that he would perform, or participate in, the surgery, under the guise of being Dr. Griffith's "assistant," as designated by Dr. Griffith's consent form.
This evidence, coupled with the undisputed fact that Mr. Johnson rejected Dr. McMurray's initial offer to perform the removal surgery, sought out Dr. Griffith for that purpose, and declined to sign Dr. McMurray's consent form, is sufficient to support the Johnsons' claims for fraud.
Finally, the Appellees' insistence that the trial court properly directed a verdict as to the fraud claims, because of the missing element of damages, is misplaced. If the jury is reasonably satisfied from the evidence that Mr. Johnson's right to withhold consent to Dr. McMurray's active participation in the removal operation was violated, then it is for the jury to determine what damages, if any, Mr. Johnson suffered. If the jury finds actual damages, its award, within its discretion, may also include punitive damages.
The point to be emphasized here is that, if the jury finds the requisite element of damages, it is not precluded, as a matter of law, from awarding damages for fraudulent concealment of Dr. McMurray's participation, even if it also finds that the removal surgery was successful and did not contribute to Mr. Johnson's subsequent loss of his leg. Such latter finding, if made by the jury, may be considered in its assessment of damages on the fraud claim, but it is not controlling. In other words, our holding does not eliminate the element of damages as one of the essential elements of a fraud claim in the instant context. Rather, it is our holding that the issue of damages, under the circumstances of this case, is one for the jury as in fraud cases generally.
Therefore, because we find sufficient evidence to support each of the elements of fraudulent suppression of a material fact, we hold that the trial judge was in error in directing a verdict for each Defendant on this claim.

OTHER ISSUES
Although we reverse the judgment on the issues of fraud and conspiracy to commit fraud, we address two other issues raised by the Appellants that may recur upon retrial of the cause:
1) Whether the trial court erred in refusing to allow the Plaintiffs' expert witness to refer to a pamphlet entitled "Current Opinions of the Judicial Council of the American Medical Association"; and
2) Whether the court erred by charging the jury that Dr. McMurray could not be liable for assault and battery if the Plaintiffs gave their consent to Dr. Griffith for the performance of the sponge removal surgery.

1. The "Learned Treatise" Issue

The rule in Alabama, generally, is that "a learned treatise, essay, or pamphlet on a subject of science or art, which is testified to by an expert on the subject as being a standard or trustworthy authority on the subject, is admissible as an exception to the hearsay evidence rule." C. Gamble, McElroy's Alabama Evidence, § 258.01(1) (3d ed. 1977). Extracts from the treatise, however, "are not admissible unless the treatise is first approved by an expert as authoritative and standard," and is relevant to the issue for which it is presented in the particular trial. C. Gamble, supra, § 258.01(2), (3).
In this case, the Plaintiffs attempted to introduce into evidence a pamphlet published by the American Medical Association entitled "Current Opinions of the Judicial Council." While it is well settled in this State that medical treatises are admissible, as a precondition or predicate to their admission, the rule requires that the party *780 seeking to introduce medical books authenticate them as "standard works within that profession." Comment, Learned Treatises as Direct Evidence: The Alabama Experience, 1967 Duke L.J. 1169, 1171 (1969).
We have searched the record thoroughly for some indication that the Plaintiffs' lawyer properly authenticated this pamphlet. The question that most closely bears on the requisite predicate is: "Does [the pamphlet] have within it pronouncements of standards of care for patients by doctors?" While that question is an appropriate preliminary inquiry, it falls short of the ultimate question: "Is the pamphlet recognized as an authoritative and standard work in the medical profession?" The requirement of the rule that the expert witness respond to this all-important question is more than a matter of form or a mere technicality.
What the writer in the Duke Law Journal called "The Alabama Experience" has been hailed for its liberality in relaxing the burden of proof as to scientific and artistic matters. But this liberality cannot be extended to preclude the necessity for authentication of the proffered publication as a recognized standard work within the particular field of art or science. This requisite predicate is the very foundation of the rule itself. Indeed, absent this authentication, there is no proof that the proffered document is in fact a learned treatise; thus its admissibility, as an exception to the hearsay rule, fails.

2. The Jury Charge Issue

Appellants also claim as error the trial judge's charge to the jury as follows:
"If you are reasonably satisfied from the evidence that the Plaintiff Lavoid Johnson gave his consent to Thomas Griffith for the sponge removal operation and that Dr. Griffith pursuant to that consent, was authorized, under the evidence in this case, to choose the Defendant Dr. McMurray as his assistant, then you cannot find that the Defendant Dr. McMurray was guilty of an assault and battery...."
At the time the above charge was initially given, Appellants made no objection. During deliberations, the jury asked the court for a recharge on the issue of assault and battery. The trial judge responded by giving the very same charge; thereupon, Appellants objected.
Recently, in Reece v. Simpson, 437 So.2d 68 (Ala.1983), this Court held:
"First, we note that no objection was made to the court's oral charge and, therefore, we would be powerless to reverse even if the plaintiff's argument was meritorious. As we held in Record Data International, Inc. v. Nichols, 381 So.2d 1 (Ala.1979):
"`Rule 51, ARCP specifies that error may not be assigned for the giving of a defective charge unless the party seeking to assign error objects to that portion of the charge which is defective before the jury retires to consider its verdict, and specifically states the matter to which he objects and the grounds of his objection....
"`Rule 51 affords the trial court an opportunity to correct any error in its charge before it becomes error with injury to reversal.'
"381 So.2d at 7."
In Reece, we determined that the charge given by the trial judge was correct, and that plaintiff's objection, even if timely, would not have been a meritorious one. Although the charge is hypothesized upon the jury's belief of the evidence favorable to the Defendants, we think the charge as given is confusing and misleading in light of the evidence that the Johnsons affirmatively demanded that Dr. McMurray not participate in any manner in the sponge removal surgery. (This point of confusion is demonstrated by the jury's inquiry during deliberations.) A jury question was presented with respect to the propriety of Dr. Griffith's choice of Dr. McMurray as his "assistant" for the sponge removal surgery in light of Mr. Johnson's insistence that he demanded of both doctors that Dr. McMurray take no part in the surgery. And we are confident that the trial court *781 will encounter no difficulty in making this clear upon retrial.
Ordinarily, a doctor is within his rights in choosing whomever he desires as his assistant, as long as the patient does not object. In this case, however, the jury was not bound, as a matter of law, to interpret Mr. Johnson's execution of Dr. Griffith's consent form as carrying with it the patient's consent for Dr. McMurray to act as Dr. Griffith's assistant, in view of the affirmative proof that Mr. Johnson did object. Therefore, because the charge is subject to being interpreted as "transferred intent," as a matter of law, we hold that the trial judge erred in so instructing the jury. If this jury instruction had been properly objected to, and its misleading tendencies called to the trial court's attention, the Johnsons' claim of reversible error would have been meritorious.

CONCLUSION
We have reviewed closely each of the remaining issues presented; examined the voluminous record; considered each of the adverse rulings by the trial judge which are apt to recur on retrial; and we find no further error. For the error earlier noted, however, the judgment of the trial court is reversed and this cause is hereby remanded to the trial court for further proceedings against both Defendants consistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and SHORES, BEATTY and ADAMS, JJ., concur.
MADDOX, FAULKNER, ALMON and EMBRY, JJ., dissent.
EMBRY, Justice (dissenting):
I cannot agree with the majority that the trial court erred in directing a verdict for defendants on the Johnsons' claims of fraud and conspiracy to commit fraud. Great reliance is placed upon Horn v. Citizens Hospital by the majority in reversing because of the trial court's action regarding those claims. That reliance is grossly misplaced. Rather than recognizing a cause of action for fraudulent concealment, the Horn issue was whether fraudulent concealment could toll the statute of limitations as set out in § 6-5-482(b) of the Code. Indeed, I find no cases where an action for fraud against a doctor, for medical malpractice, has resulted in recovery absent evidence of fraudulent misrepresentation. The only alleged false misrepresentation was in connection with Dr. McMurray's future participation in the surgery to remove the sponge. There is no evidence of the required then-present intent not to perform (by intending to participate in the future surgery). Stated otherwise, there is no evidence that McMurray falsely misrepresented a then-present existing fact. See Purcell Company v. Spriggs Enterprises, Inc., 431 So.2d 515 (Ala.1983). It should be noted that Mr. Johnson did not seek Dr. Griffith. Dr. McMurray procured his services for Mr. Johnson.
Contrary to the view of the majority, the jury could not have found damages had the question been submitted to it; there was no evidence of damages and none from which damages could be inferred.
Regarding the jury instruction issue: it shows that Dr. Griffith would not agree to perform the surgery unless Dr. McMurray assisted. It is logical to assume that the person who did the first surgery would be the most desirable assistant. Thus, the charge was correct and the jury's acquittal on the assault and battery claim was, of necessity, a conclusion that Johnson had consented to McMurray's participation in the sponge removal surgery.
Having found no error, I can only conclude that the judgment below should be affirmed.
MADDOX, FAULKNER and ALMON, JJ., concur.

ON APPLICATION FOR REHEARING
JONES, Justice.
*782 OPINION MODIFIED; APPLICATION FOR REHEARING OVERRULED.[4]
TORBERT, C.J., and SHORES, BEATTY and ADAMS, JJ., concur.
MADDOX, FAULKNER, ALMON and EMBRY, JJ., dissent.
NOTES
[1] As we construe the Plaintiffs' statement of their respective claims (and as they concede on appeal), each of Mrs. Johnson's claims is derivative merely, seeking damages only for loss of consortium.
[2] Ordinarily, a claim for conspiracy to commit a wrong, and a claim for commission of that wrong, are not necessarily provable by the same evidence; i.e., the burden of proving the one is not necessarily met by proving the other. Here, however, the one (the alleged conspiracy to commit fraud) cannot exist without the other (the alleged commission of fraud), because the burden of proving fraudulent suppression, under the peculiar facts of this case, is met only if the proof also shows that the Defendants were acting in concert with respect to the alleged fraudulent concealment. Therefore, we need address only the single issue of Plaintiffs' fraud claim.
[3] Because of Horn`s and Benefield`s holdings, applying the medical malpractice act's statute of limitations, it is worthy of note that the shortest period of limitations here applicable is two years, with the outer limits of four years (as opposed to one year from the date of discovery). The amendment adding Dr. Griffith was filed well within the prescribed period. Thus, the statute of limitations is not an issue in the instant case.
[4] We note receipt, after release date of the original opinion, of the "Suggestion of Death" of Mr. Johnson. His death has no effect on these appellate proceedings. See A.R.A.P. 43(a). But, upon remand of this cause to the circuit court, the operative effect of A.R.Civ.P. 25 is invoked.