Mildred ANDERSON, Plaintiff–
Appellant,

v.

GEORGE H. LANIER MEMORIAL
HOSPITAL, Defendant,

Surgidev Corporation, Defendant–
Appellee,

CHATTAHOOCHEE VALLEY HOSPI-
TAL SOCIETY, INC., d/b/a George H.
Lanier Memorial Hospital and Nursing
Home, Third–Party Plaintiff–Appellee–
Cross–Appellant,

v.

The BOARD OF TRUSTEES OF The
UNIVERSITY OF ALABAMA, A Body
Corporate for the University of Ala-
bama in Birmingham; Hugh Davis and
Howard D. Clem, Sr., Third–Party De-
fendants–Cross–Appellees.

Floareod HODO, Plaintiff–Appellant,

v.

GEORGE H. LANIER MEMORIAL
HOSPITAL, Defendant,

Surgidev Corporation, Defendant–
Appellee,

Chattahoochee Valley Hospital Society,
Inc., d/b/a George H. Lanier Memorial
Hospital and Nursing Home, Defen-
dant–Third–Party Plaintiff–Appellee–
Cross–Appellant,

The Board of Trustees of The University
of Alabama, A Body Corporate for the
University of Alabama in Birmingham;
HUGH DAVIS and HOWARD D.
CLEM, SR., Third–Party–Defendants–
Cross–Appellees,

Alabama Hospital Association Trust,
Defendant–Intervenor.

Jack LINDSEY, Plaintiff–Appellant,

v.

GEORGE H. LANIER MEMORIAL
HOSPITAL, Defendant,

Surgidev Corporation, Defendant–
Appellee,

Chattahoochee Valley Hospital Society,
Inc., d/b/a George H. Lanier Memorial

Hospital and Nursing Home, Defen-
dant–Third–Party Appellee–Cross–Ap-
pellant,

The Board of Trustees of The University
of Alabama, A Body Corporate for the
University of Alabama in Birmingham;
HUGH DAVIS and HOWARD D.
CLEM, SR., Third–Party–Defendants–
Cross–Appellees,

Alabama Hospital Association Trust,
Defendant–Intervenor.

Charles WILLIAMS, an Individual,
Plaintiff–Appellant,

Marlene Williams, an Individual,
Plaintiff,

v.

Vicki L. TORSCH, as Executrix of
the estate of Theodore Torsch,
Deceased, Defendant,

CHATTAHOOCHEE VALLEY HOSPI-
TAL SOCIETY, INC., d/b/a George H.
Lanier Memorial Hospital and Nursing
Home, Defendant–Appellee, Third Par-
ty Plaintiff–Cross–Appellant,

v.

The BOARD OF TRUSTEES OF The
UNIVERSITY OF ALABAMA, a Body
Corporate for the University of Ala-
bama in Birmingham; HUGH DAVIS
and HOWARD D. CLEM, SR., Third
Party Defendants–Cross–Appellees.

Nos. 91–7522, 91–7731.

United States Court of Appeals,
Eleventh Circuit.

Feb. 12, 1993.

**1514**

Roger Lucas, Lucas, Alvis & Kirby, Birmingham, AL, John A. Tinney, Roanoke, AL, Elizabeth Powell Jones, Birmingham, AL, for appellants.

A. Joe Peddy, Smith, Spires & Peddy, Ina B. Leonard, Office of Counsel, Edward J. Kennedy, III, Robert D. Norman, Norman, Fitzpatrick, Wood, Williams & Parker, Birmingham, AL, for third-party defendants.

Joe Espy, Les Hayes, III, Melton, Espy, Williams & Hayes, Montgomery, AL, for appellees in No. 91–7522.

John A. Tinney, Roanoke, AL, Roger Lucas, Birmingham, AL, for Williams.

Les Hayes, Melton, Espy, Williams, & Hayes, Montgomery, AL, for Chattahoochee Valley in No. 91–7731.

Before HATCHETT, EDMONDSON and BIRCH, Circuit Judges.

HATCHETT, Circuit Judge:

In this appeal, we reverse the district court's grant of summary judgment to a hospital because a jury must decide the applicable statute of limitations period according to the law of the state of Alabama.

## I. BACKGROUND

The four appellants in these consolidated cases, Charles Williams, Mildred Anderson, Jack Lindsey, and Floareod Hodo, were patients of Dr. Theodore Torsch, an opthalmologist. Each of the appellants underwent cataract surgery at George H. Lanier Memorial Hospital and Nursing Home (Lanier Hospital). During the surgeries, Dr. Torsch inserted experimental intraocular lenses (IOLs) into their eyes. Ultimately, each of the appellants suffered pain and faulty vision as a result of the lens implants.

In separate actions, the appellants sued Lanier Hospital alleging that the hospital failed to obtain their informed consent for the experimental procedure. Williams sued the hospital for medical malpractice, fraud, and outrageous conduct. In separate law-

suits, Anderson, Lindsey, and Hodo sued the hospital for medical malpractice, negligence, outrageous conduct, fraud, and fraudulent concealment. Anderson, Lindsey, and Hodo also sued Surgidev Corp., the IOL manufacturer, for failing to assure that Dr. Torsch obtained their informed consent.

Prior to the surgeries, the defendant Surgidev had received an exemption from the laws prohibiting the use of experimental instruments on human beings from the Food and Drug Administration (FDA).[1] Under the FDA's regulatory scheme, Surgidev was the "sponsor" of the IOL program and Lanier Hospital was the institutional site of study.[2] As the institutional site of study, FDA regulations required Lanier Hospital to establish and maintain an institutional review board (IRB) to oversee the IOL clinical study. Surgidev recommended Dr. Torsch to serve as the "investigator," a qualified ophthalmologist who could perform the eye operations and implant the lenses. Hodo, Anderson, and Lindsey allege that Surgidev had a legal duty to ensure that Dr. Torsch secured informed consent from his patients.

## II. THE APPELLANTS

Charles Williams is a fifty-three year old man who possesses a ninth grade education. He underwent eye surgery in January of 1986. On the day of the surgery, Williams signed consent forms, but neither the hospital staff nor Dr. Torsch explained the forms, and Williams testified that it would have taken him "half a day to read all that stuff." Williams alleges that Dr. Torsch never explained to him that an experimental lens would be implanted in his eye.

In May or June of 1986, Williams visited two physicians because he suffered increasing pain in the eye on which Dr. Torsch performed the surgery. The doctors told Williams "that they were surprised at the way Dr. Torsch performed the surgery."

Williams admitted that he thought Dr. Torsch may not have performed the surgery properly. Williams alleges, however, that he did not find out about the experimental nature of the surgery until May, 1989. On July 20, 1989, he filed suit against Lanier Hospital.

Mildred Anderson is a sixty-seven year old widow who possesses a fifth grade education. Anderson testified that she has no education and is barely able to read and write. Anderson underwent initial eye surgery on her left eye in June, 1985, and Dr. Torsch performed a second eye surgery in July, 1986. Just prior to her first eye surgery, Anderson received hospital consent forms. Anderson testified that she signed the forms because she knew she was undergoing cataract surgery. No one read or explained the contents of the forms to her. Anderson testified that Dr. Torsch did not advise her that he would be inserting a lens in her eye.

After completion of the first surgery, Anderson experienced pain in her left eye and was unable to use it. Sometime in 1985 she saw a physician in Columbus, Georgia, who informed her that Dr. Torsch did not perform her eye surgery properly and had inserted "the wrong thing in it." Anderson's second eye operation did not improve her vision or help alleviate the pain. Anderson testified that she did not know that Dr. Torsch inserted an investigational lens in her eye until May, 1989. On May 31, 1989, Anderson filed suit against Lanier Hospital and Surgidev.

Jack Lindsey is a sixty-nine year old man who never attended school and can neither read nor write. In January of 1986, he underwent eye surgery. Dr. Torsch never discussed with him possible problems or complications associated with cataract surgery. On the morning of his surgery, Lanier Hospital staff asked Lindsey to sign "some papers." Lindsey marked an "X" on the lines provided. Lindsey stated that a nurse told him that "they going to put a

---

1. Section 520(g) of the Food, Drug and Cosmetic Act (1976), 21 U.S.C. § 360j(g), allows an exemption for IOLs so that qualified ophthalmologists may use them for investigational purposes.

2. *See* 21 C.F.R. § 813, *et seq.* (1988).

glen [sic] in my eye, but they didn't say what."

After his surgery, Lindsey complained of pain in his eye. Sometime in 1987, Lindsey went to see another physician in Columbus, Georgia, because he could not use the eye. Lindsey testified that the physician advised him that Dr. Torsch "ought to have been ashamed of himself, putting this kind of glen [sic] in my eye." Lindsey alleges he did not know of the experimental nature of the lens in his eye until May, 1989. On May 31, 1989, he filed suit against Lanier Hospital and Surgidev.

Floareod Hodo is an eighty-year old woman who possesses a fourth grade education. After undergoing surgery in January of 1987, Hodo experienced problems with her eye. Approximately four to six weeks after her surgery, Hodo went to Atlanta to have her eye examined. In March or April of 1987, a physician told Hodo that Dr. Torsch incorrectly performed the eye surgery. Hodo claims that Dr. Torsch never discussed the nature of the surgery with her nor advised her that he was going to insert a lens in her eye. Hodo did not learn of the experimental nature of her eye surgery until May, 1989. On May 24, 1989, she filed suit against Lanier Hospital and Surgidev.

## III. PROCEDURAL HISTORY

On February 9, 1990, Lanier Hospital filed a third-party complaint against the Board of Trustees of the University of Alabama (the Board), Hugh Davis, and Howard D. Clem, Sr., alleging that any acts or omissions that occurred at the hospital were the responsibility of these parties. Pursuant to a Management Agreement, the University of Alabama at Birmingham contracted to provide Lanier Hospital with a "competent and experienced Administrator." Davis served as administrator at Lanier Hospital from August 1, 1984, until November of 1985. Clem became the interim administrator in November, 1985, and retained the position until May, 1986, when the hospital appointed him full-time administrator. Clem served as administrator at Lanier Hospital until July 17, 1987. Thus, the hospital sued the Board, Davis, and Clem for indemnification in the event the appellants were successful in their lawsuits.

Lanier Hospital moved for summary judgment arguing that Alabama's two-year statute of limitations for medical malpractice governed the actions. Because more than two years had elapsed between the operations and the filing of the lawsuits, Lanier Hospital argued that the statute of limitations had run on all of the lawsuits. Surgidev also moved for summary judgment asserting that it owed no duty under federal law to ensure that the hospital obtained informed consent from the patients who received its IOLs. The third-party defendants, the Board, Davis, and Clem, also moved to dismiss Lanier Hospital's third-party complaint.

The district court granted Lanier Hospital's motion for summary judgment as to all appellants, finding that their claims were barred by Alabama's two-year statute of limitations. Further, the district court granted Surgidev's motion for summary judgment as to all appellants finding that federal law did not impose a duty upon Surgidev to ensure that its "investigators" obtained informed consent from each subject of the study. The district court also granted the Board's motion to dismiss Lanier Hospital's third-party complaint on the basis of sovereign immunity. Lastly, the district court granted Davis's and Clem's motions to dismiss the third-party complaint. The district court found that Lanier Hospital failed to show that Davis and Clem violated any duty to the hospital and, in the event that Davis and Clem did owe a duty, that Lanier Hospital failed to show that a violation of that duty caused any damage to the hospital.

## IV. ISSUES

The issues presented in this appeal are: (1) whether the district court properly determined that the statute of limitations had run on the plaintiffs' suit against Lanier Hospital; (2) whether the district court properly granted summary judgment in favor of Surgidev because Surgidev owed no

duty to assure that Dr. Torsch obtained informed consent from the appellants; and (3) whether the district court properly dismissed Lanier Hospital's third-party complaint against the Board, Davis, and Clem.

Upon review of these issues, we hold that the district court entered judgment without an error of law on Surgidev's motion for summary judgment. Further, we find that the district court correctly dismissed Lanier Hospital's third-party complaint. Accordingly, this opinion will focus upon the summary judgment entered in favor of Lanier Hospital. We review a district court's grant of summary judgment *de novo*. *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 795 (11th Cir.1992).

## V. CONTENTIONS

Although the appellants concede that Alabama's Medical Liability Act governs their lawsuits, they contend that the statute of limitations in the Act does not bar their lawsuits. The Medical Liability Act contains a two-year statute of limitations. The Act, however, also contains a "savings provision" and is subject to the statutory period of limitation for fraud. Because the statute of limitations for a cause of action for fraud does not begin to run until the date of discovery of the fraud, and runs no later than four years from the date of the fraudulent act, the appellants argue that their lawsuits fall within the statute of limitations.

On the other hand, Lanier Hospital argues that the substance of the action, not its form, should determine the applicable statute of limitations period. Lanier Hospital asserts that because the plaintiffs' fraud claim is so intertwined with medical malpractice, the medical malpractice statute of limitations should govern their lawsuits. Accordingly, Lanier Hospital contends that the two-year statute of limitations on the appellants' lawsuits has run.

## VI. DISCUSSION

■ The Alabama Medical Liability Act states that the statute of limitations period for actions against physicians, surgeons, or medical institutions for liability error, mistake, or failure to cure is two years after the act, omission, or failure that gave rise to the claim. The Act also contains a "savings provision" which provides that

> if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act....

*See* Ala. Code § 6–5–482(a) (1975). In section 6–5–482(b), the Act states:

> Subsection (a) of this section shall be subject to all existing provisions of law relating to the computation of statutory periods of limitation for the commencement of actions, namely, section [ ] ... 6–2–3 ... provided, that notwithstanding any provisions of sections, no action shall be commenced more than four years after the act, omission or failure complained of....

Section 6–2–3 of the Alabama Statutes sets out the statute of limitations period for claims involving fraud. Specifically, that section states:

> In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action.

Ala. Code § 6–2–3 (Supp.1992). Thus, claims brought under the Alabama Medical Liability Act involving fraud against a health care provider are subject to the statute of limitations period for a cause of action for fraud. *See Trammer v. Bernstein*, 596 So.2d 572, 574–75 (Ala.1991). Nonetheless, the actions must be brought within four years of the fraudulent act. *Bowlin Horn v. Citizens Hospital*, 425 So.2d 1065, 1070–72 (Ala.1982).

■ All the parties acknowledge that the Alabama Medical Liability Act governs these lawsuits. Thus, the question becomes which statute of limitations contained in the Act applies to the appellants' claims. Lanier Hospital argues that the appellants' unsuccessful eye surgeries gave rise to their claims. Thus, the hospital asserts that the appellants' claims are based upon Dr. Torsch's surgical procedure, not the failure to inform the appellants that an experimental lens would be implanted in their eyes. Because the appellants claims are inextricably intertwined in the physician-patient relationship, Lanier Hospital argues that the action giving rise to the appellants' claims was their individual eye surgeries. Accordingly, Lanier Hospital argues that because each appellant filed his or her complaint after the two-year statutory period had run, the district court properly granted summary judgment in favor of the hospital.

In the alternative, Lanier Hospital argues that in order to avail themselves of the time saving provision in the Alabama Medical Liability Act, the appellants must show that: (1) their causes of action were not discovered within the two-year statutory period; and (2) their causes of action could not reasonably have been discovered during the two-year statutory period. Lanier Hospital argues that the appellants cannot show that their causes of action could not reasonably have been discovered within two years. The hospital notes that each appellant experienced pain and vision problems with his or her eye after the surgery. Further, several appellants sought medical attention from other physicians. Lanier Hospital asserts that these actions occurred within the initial two-year limitations period. Thus, even applying the "savings provision," the limitations period ran on the appellants' claims.

Lanier Hospital argues that this lawsuit is analogous to *Sellers v. Edwards*, 289 Ala. 2, 265 So.2d 438 (1972). In *Sellers*, a physician left a surgical tool in the plaintiff's body after the surgery. The plaintiff repeatedly complained about pain in the area of his surgery. Almost two years later, an X-ray revealed that a clamp had

been left inside the plaintiff's body. The plaintiff, however, did not file suit against the doctor until almost four years elapsed from the date of surgery alleging claims for trespass, assault and battery, and breach of contract. *Sellers*, 265 So.2d at 439.

The Alabama Supreme Court held that the form of the action was not the determinative factor as to the statute of limitations question. Instead, the decisive factor is the substance of the action. Because the Alabama Supreme Court found that the plaintiff knew something was wrong after his initial surgery, it found that the two-year statute of limitations governing medical malpractice barred the lawsuit. *Sellers*, 265 So.2d at 440.

In this case, Lanier Hospital asserts that the substance of the appellants' actions should dictate the statute of limitations, rather than the form of the actions. The appellants knew something was wrong with their eyes within two years after their surgeries, as did the plaintiff in *Sellers*. Moreover, the appellants sought medical attention from other physicians. Thus, Lanier Hospital argues that each appellant possessed facts which could have reasonably led him or her to the discovery of their causes of action.

The district court agreed with Lanier Hospital's arguments finding that in each case, the appellant knew within two years of his or her initial surgery that it was unsuccessful. Further, the district court found that "each [appellant] had reasonable cause to inquire and did actually inquire of others about facts known to them which reasonably would have disclosed that Dr. Torsch had installed the wrong lens and that each could never be properly cured of the matter so treated by Dr. Torsch." The district court noted that although the appellants may not have known that Dr. Torsch and Lanier Hospital failed to assure that they had given their informed consent to the operation, each appellant knew that his or her eye had been damaged as a result of the eye operation. Thus, the district court determined that the statute of limitations had run on each of

the appellant's causes of action. The district court, however, was not able to consider the Alabama Supreme Court's most recent decision concerning this very issue, *Green v. Wedowee Hospital*, 584 So.2d 1309 (Ala.1991).

The *Green* case, released a few months after the district court rendered its decision concerning these appellants, dealt with the exact same fraud claims found in this case. In *Green*, a patient of Dr. Torsch instituted a fraud action against Wedowee Hospital alleging that the hospital failed to inform him of the experimental nature of his eye surgery. The *Green* plaintiff also alleged that the hospital failed to obtain FDA approval for performing the IOL surgery. Green brought his lawsuit against the hospital over two years after Dr. Torsch performed his cataract surgery. Moreover, Green knew that Dr. Torsch was replacing a lens in his eye. Wedowee Hospital moved for summary judgment, raising in part a statute of limitations defense. *Green*, 584 So.2d at 1311.

Green contended that he did not become aware of the experimental and fraudulent nature of his lens replacement surgery until April, 1989, over three years after the surgery. The Alabama Supreme Court reversed the lower court's grant of summary judgment in the hospital's favor on statute of limitations grounds. The Alabama Supreme Court noted that although an objective standard should be used to determine when a party should have discovered fraud for statute of limitations purposes, "the mere fact that the standard is an objective one does not foreclose a jury determination on the issue." *Green*, 584 So.2d at 1312 (citing *Hicks v. Globe Life & Accident Ins. Co.*, 584 So.2d 458 (Ala.1991)). Further, the Alabama Supreme Court reiterated:

> The question of when a plaintiff should have discovered fraud should only be taken away from the jury and decided as a matter of law in cases in which the plaintiff actually knew of facts which would put a reasonable person on notice of fraud.

*Green*, 584 So.2d at 1312 (citations omitted) (emphasis in original). The Alabama Su-

preme Court held that the evidence in the record revealed that Green did not have actual knowledge of the alleged fraudulent nature of his surgery before April, 1989, and a jury could have found that "Green acted reasonably in not discovering the alleged fraud until that time." 584 So.2d at 1312. Hence, the Alabama Supreme Court held that a jury should decide when Green learned of the fraud to begin the running of the statute of limitations period. *See also Howard v. Mutual Savings Life Ins. Co.*, 608 So.2d 379, 383 (Ala.1992) (citing *Green* and deciding that plaintiff's fraud claims should go to a jury even though plaintiff believed that an insurance company did not pay her the benefits owed during the statute of limitations period. The court stated, "The subjective standard of justifiable reliance is part of a review of the reasonableness of [plaintiff's] behavior under these facts.").

To distinguish *Green* from this case, Lanier Hospital argues that *Green* involved only a fraud claim. Here, because the appellants' fraud claims are intertwined with medical malpractice claims, the hospital asserts that the two-year statute of limitations should be applied. We do not find Lanier Hospital's argument persuasive. In this case, the appellants' claims are the same as the claim addressed in *Green*. The fraud the appellants allege is that Lanier Hospital did not obtain their informed consent concerning an experimental procedure. The appellants are not arguing that their eye surgeries caused injury; instead, their claim is that they were never put on notice that they were the subjects of research. Under the ruse of removing cataracts, Dr. Torsch may have committed fraud on these appellants when he inserted experimental IOLs in their eyes. Likewise, the hospital may have committed fraud if it failed to obtain their informed consent.

■ Lanier Hospital's form over substance argument is unavailing because the facts necessary to decide whether the appellants were the victims of fraud are distinct from the facts needed to decide whether they were victims of medical malpractice. The appellants' fraud claims em-

brace the implantation of experimental lenses in their eyes that was not contemplated at the outset of their surgeries. Like the plaintiff in *Green*, the appellants in this case may have been put on notice that Dr. Torsch negligently performed their eye surgeries. The appellants, however, were not placed on notice that they were the victims of an experimental procedure. Although evidence in the record suggests that some of the appellants were aware that lenses had been placed in their eyes, this fact should not bar their claims. The plaintiff in *Green* was aware that a lens was inserted in his eye. He was not aware that the lens was experimental. *Green*, 584 So.2d at 1311. Similarly, the appellants in this case testified that they had no knowledge that the lenses in their eyes were experimental until sometime in 1989. Because a jury could determine that the appellants acted reasonably in not discovering the alleged fraud until 1989, a jury should decide when the statute of limitations period began to run on their actions.

## VII. CONCLUSION

Because a jury could conclude that the appellants acted reasonably in not discovering the fraudulent nature of their surgeries until 1989, Lanier Hospital is not entitled to summary judgment based upon the statute of limitations. As to the district court's grant of summary judgment in favor of Surgidev, and its dismissal of Lanier Hospital's third-party complaint against the Board, Clem, and Davis, we find that the district court entered judgment without an error of law. Accordingly, we reverse the district court's grant of summary judgment in favor of Lanier Hospital and affirm the district court's grant of summary judgment in favor of Surgidev and its dismissal of Lanier Hospital's third-party complaint.

AFFIRMED IN PART, REVERSED IN PART.