I agree with the majority's holding that § 6-5-549.1, Ala. Code 1975, which included licensed chiropractors within the definition of "health care provider" in the Medical Liability Act (the "Act"), applies to actions filed after May 17, 1996, the effective date of that section. Thus, the Act would apply to a medical malpractice action against a chiropractor that was filed after May 17, 1996. I write specially, however, to note that it is not really clear whether the facts of this case present a medical malpractice cause of action at all.
The Act applies only to medical malpractice actions; however, a plaintiff cannot avoid application of the Act by the use of creative pleading — it is the substance of the action, rather than the form, that is the touchstone *Page 264 
for determining whether an action is actually one alleging medical malpractice. Allred v. Shirley, 598 So.2d 1347 (Ala. 1992); Benefield v. F. Hood Craddock Clinic, 456 So.2d 52 (Ala. 1984); Sellers v. Edwards, 289 Ala. 2, 265 So.2d 438 (1972). Mr. Pennington, however, is not complaining that Dr. Mashner's actions or omissions in treating his wife caused her to suffer or aggravated any injury. Compare Allred, Benefield, supra; BowlinHorn v. Citizens Hospital, 425 So.2d 1065 (Ala. 1982). Indeed, Mr. Pennington seems to acknowledge that Dr. Mashner cured his wife's back injuries all too well. The gravamen of Mr. Pennington's breach-of-implied contract claim and his tort-of-outrage claim seems to be, rather, that he was billed for, and paid for, appointments for chiropractic services for his wife that he alleges Dr. Mashner never rendered, because, he says, Dr. Mashner and Mr. Pennington's wife were conducting a sexual affair during the appointments. I simply question whether such claims truly present a cause of action for medical malpractice. However, the trial court did not specifically address this issue, and the parties did not argue it in their briefs to this Court. Accordingly, we need not decide this issue at this stage of the proceedings.