Talladega Federal Savings and Loan executed a loan, secured by a mortgage upon real property, to James Dewey and Mary F. Ford. As a condition to granting the loan, Talladega Federal required the Fords to make payments, which it held in escrow, for use in the payment of fire insurance on the property. A policy of fire insurance was issued on November 30, 1977, by Utica Fire Insurance Company through its agent David Watts, d/b/a Watts Insurance Agency. The Fords were the named insured with Talladega Federal as mortgagee. The policy's term was for twelve months beginning November 30, 1977. It contained a continuous renewal provision.
Talladega Federal paid the annual premiums from the escrow account, upon billing from Watts that they were due, through November 1980. Watts did not bill Talladega *Page 318 
Federal for the premium for the year beginning November 1980.
On August 29, 1981, the insured property was damaged by fire in the approximate amount of $15,000. The Fords filed a claim for the loss. Utica denied payment due to the unpaid premium. The Fords brought suit against Utica, Watts, and Talladega Federal, alleging breach of contract to provide and maintain insurance on the property. Utica impleaded $9,349.12 and was dismissed from the suit. Talladega Federal settled with the Fords for $6,583.97 and filed a cross claim against Watts claiming damages in the amount of $15,000.
The cross claim alleges generally that defendant Watts breached a duty to Talladega Federal to send to it a notice of premiums due upon the fire insurance policy issued by Watts as general agent for the insurer, Utica Fire Insurance Company. The duty was alleged to arise from either an oral understanding or prior business dealings between Talladega Federal and Watts. It was further alleged that Watts failed to send notice of premium due, which Talladega Federal had relied upon. As a result, Talladega Federal failed to pay the premium when due and became liable to its mortgagors when a fire loss occurred. Because there was an uninsured loss by the insured mortgagors, Talladega Federal paid to them the sum of $6,583.97 in settlement and claimed that amount together with costs and attorney fees from Watts.
Subsequent to oral hearing, the trial court entered judgment in favor of Talladega Federal in the amount of $6,583.97 and costs. The judgment in general terms finds the issues in favor of cross-complainant Talladega Federal.
It is clear from the allegations of the cross-complaint and from the evidence presented to the court, that the theory of the trial was that of breach of contract. Such contract was implied from conversations between Talladega Federal and Watts at the initiation of their business dealings, the subsequent manner of conducting such dealings and the knowledge of each of the customs and practices of their respective businesses. It is well settled that a contract may be implied by law from proof of such facts. Sims v. Etowah County Board of Education,337 So.2d 1310 (Ala. 1976).
Watts contends on appeal that there was no evidence to support the judgment in that (a) there is no evidence of a duty owed by him to Talladega Federal nor evidence of a breach of any duty; (b) there is no evidence of injury or damage to Talladega Federal arising from a breach of duty; (c) there is no proof of the amount of damage nor that such alleged damage was within the contemplation of the parties; and (d) if there was a breach of some duty, Talladega Federal was a joint tort feasor and not entitled to contribution as a matter of law.
We will first dispose of the last contention relating to joint tort-feasors. The complaints of both original plaintiff and cross-plaintiff, together with the theory upon which this matter was heard by the court, clearly show that the entire action was founded upon contract not tort. Therefore, the contention of Watts of the presence of contributory negligence and joint tort-feasors has no relation to the case. We therefore proceed to discussion of the other contentions of Watts.
The essence of the issues presented by appellant Watts relates to the factual question of whether there was between Watts and Talladega Federal a relationship from which arose a duty which was breached by Watts to the damage of Talladega Federal.
In considering that issue, it is to be kept in mind that the testimony was heard orally by the trial judge sitting as the trier of fact. In such a case, his judgment must be presumed correct, and may not be disturbed by this court if supported by the evidence and the reasonable inferences to be drawn from it.Mac Pon Co. v. Vinsant Painting and Decorating, 423 So.2d 216
(Ala. 1982). There was testimony that in 1974, at its opening for business, the president of Talladega Federal talked with Watts about their operation and the procedures to be used in securing and paying for *Page 319 
insurance from loan escrow accounts. The insuring company, or its agent, would send to Talladega Federal, at the end of a policy term, notice of the amount of the renewal premium for the new year and when it was due. Talladega Federal then would draw a check for that amount upon the escrow account and pay it to the insurer through its agent.
The Fords negotiated a loan with Talladega Federal in November 1977. Watts, apparently at the request of the Fords, acting as a general agent for Utica Fire, issued a policy of fire insurance covering certain property of Ford, given as security for the loan, in the amount of $20,000. The first year's premium was disbursed by the closing attorney upon the delivery of the policy and premium statement. The policy was automatically renewed for the next two years upon payment by Talladega Federal to Watts after receipt of notice of premium due. It is undisputed that this procedure was the custom in such cases.
Prior to the expiration of the policy in 1980, Ford inquired of Watts' employee if coverage could be increased. The employee told Ford that the insuring company would have to approve additional coverage as $20,000 in coverage was the limit of Watts' general agency. The employee told the loan officer of Talladega Federal about the conversation with Ford. Watts' employee later told Ford the additional coverage could not be given. No instruction was given by Ford as to cancellation of the policy or that he was obtaining coverage from another company. Ford had homeowner's coverage with Watts for his home which was also security for the loan with Talladega Federal.
When the fire policy neared expiration in November 1980, the usual renewal premium notice for it was not sent by Watts to Talladega Federal. The renewal premium notice for the homeowner's policy was sent and was paid for the policy year November 1980 to November 1981 from the Fords' escrow account. The uninsured property burned in August 1981.
With the cross-complaint and the stated evidence before it, the court entered its judgment. Though the judgment contained no finding of fact, it will be assumed that the trial court found the facts sufficient to support its judgment. Thomas v.Davis, 410 So.2d 889, 891 (Ala. 1982). Whether the business relationship and previous practice or custom of doing business between Talladega Federal and Watts Insurance Agency effected an implied contract, placing upon Watts the duty of notifying Talladega Federal that premium was due upon the Fords' fire policy, presented a question of fact for the trial court.Clayton v. Simpson, 346 So.2d 457 (Ala.Civ.App. 1977). It is the opinion of this court that such finding is sufficiently supported by the evidence.
Having found the duty, the question of a breach and damage flowing therefrom was a further determination for the trial court. The failure of sending a premium due notice by Watts to Talladega Federal was undisputed. He did not send it as in previous years and as was the custom. He contended that written notice was excused because telephonic notice was given that Ford wanted additional coverage which he could not write. The trial court apparently found that such notice did not excuse a breach. We will not hold such finding erroneous.
We have arrived at the issue of whether the breach of the contract caused Talladega Federal injury and whether the evidence furnished sufficient measure for damage for such injury.
It was without dispute that Watts knew of the escrow agreement for payment of insurance premiums between Talladega Federal and the Fords. It was admitted by Watts that he looked to Talladega Federal for payment, though Ford had ordered the insurance. Watts knew, or should have known, that Ford relied upon Talladega Federal to use his escrow funds to keep his property insured. If Talladega Federal did not use such funds to keep the property insured, there was clearly injury to it and Ford in the event of fire loss. Clearly the *Page 320 
court was at liberty to find that loss to be within the contemplation of the parties. It is further evident that if Watts failed in its duty to Talladega Federal, it could cause Talladega Federal to become liable to the Fords if loss occurred. The damage suffered by Ford from an uninsured fire loss due to nonpayment of premium would be due from Talladega Federal. Talladega Federal would pass on that liability to Watts because of Watts' breach of his duty to it.
Watts presents the contention that the amount of the settlement between Talladega Federal and the Fords was not a legal measure of the damage of Talladega Federal. The basis of the contention is that the amount shown as paid by Talladega Federal resulted from a settlement between the original plaintiffs and defendant, rather than a trial to judgment upon the liability of Talladega Federal. Therefore in order to recover from Watts as an indemnitor, Talladega Federal had the burden of establishing that it was actually liable to the Fords and that the settlement of its liability was a reasonable one.
The contention of Watts appears to be the general rule if indemnity is sought against an indemnitor without notice of either the original suit or of the settlement by the indemnitee. Moses-Ecco Company v. Roscoe-Ajax Corporation, 320 F.2d 685 (D.C. Cir. 1963). However, if the indemnitor is notified of the action against the indemnitee, particularly if a party therein, and can exercise his right to present indemnitee's defenses under Rule 14, A.R.Civ.P., he is precluded from contesting the indemnitee's liability in a subsequent indemnity or third-party action. "Notice and an opportunity to defend are the indispensable due process satisfying elements." Jennings v. United States, 374 F.2d 983
(4th Cir. 1967). Jennings stands for the proposition that lack of notice, either of original suit or a settlement with opportunity to participate by indemnitor, vitiates the binding effect of the judgment or settlement and entitles the indemnitor to be heard on the issue of indemnitee's liability and the reasonableness of a settlement. This court has stated these principles before in the case of Modernage Homes v.Wooldridge, 55 Ala. App. 68, 313 So.2d 190 (1975), albeit in a different factual context.
The facts of this case, when examined in light of these stated principles, indicate as follows: Watts was not only a cross-defendant of Talladega Federal, he was also an original defendant of the suit brought by the Fords. He was informed of and served with copies of all the proceedings, including the settlement by Utica Fire and Talladega Federal with plaintiff. The record fails to indicate any effort to object thereto or participate therein. He was present at the time of the pre-trial hearing of the third-party action where it was stipulated that the settlements had been made. The pre-trial order states that, "all other parties and issues but the third-party complaint have been eliminated except the cross-claimant and cross-respondent." Watts filed no pleadings after service of the amended cross-claim. It clearly appears that he had ample notice and opportunity to participate in or object to the settlement.
Jennings says, "The indemnitor's knowing failure to participate is deemed a consent to representation by the indemnitee, thus forming the predicate for application of the rule that a litigant is entitled only once to his day in court." Jennings, supra at 986.
It is further to be noted that the relationship of plaintiffs with Talladega Federal and their escrow agreement was testified about and stipulated to in the trial between Talladega Federal and Watts. The liability of Talladega Federal to the Fords was amply supported and was an issue of fact for the court. There does not appear in the record any effort by Watts to challenge the reasonableness or imprudence of the settlement. The opinion in Moses-Ecco Company, supra, indicates that only if there is a challenge of a settlement as imprudent, must the indemnitee justify it as prudent. Moses-Ecco Company, supra at 689. *Page 321 
In summary, Watts had notice of the original suit and all of its proceedings, including the opportunity to object or participate. He had his day in court. In addition to notice of suit and settlement, the court heard evidence sufficient to have determined the liability of Talladega Federal to the Fords and the liability of Watts over to Talladega Federal. There being no challenge to the stipulated amount of the settlement, the court is assumed to have found it to be reasonable and the proper measure of damage. Thomas v. Davis, supra.
Finding no error, the judgment is affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur. *Page 549