SELLERS, Justice.
*214 Joseph L. McNamara, Jr., a pharmacist, appeals from a summary judgment entered by the Shelby Circuit Court in favor of Benchmark Insurance Company ("Benchmark") in Benchmark's indemnity action against McNamara. Benchmark commenced the indemnity action in an effort to recover funds expended to settle a medical-malpractice action brought against Southern Medical, Inc. ("Southern Medical"), Benchmark's insured and McNamara's employer. The medical-malpractice action was brought against Southern Medical by Ricky Avant and Kim Avant and was based, at least in part, on the alleged tortious acts and omissions of McNamara.
Introduction
In October 2011, the Avants commenced their medical-malpractice action against Southern Medical, a compounding pharmacy. In their complaint, the Avants alleged that, in December 2009, Mr. Avant's doctor, Dr. Raul Magadia, "issued a physician order for Mr. Avant to receive ... [the antibiotic] Tobramycin 5mg/kg intravenously every 24 hours for two weeks."
The Avants also asserted that Southern Medical, when processing Mr. Avant's prescription, discovered that Medicare would not pay for tobramycin. Thus, the Avants claimed, Southern Medical sought to have the prescription for tobramycin replaced by a prescription for gentamicin, a different antibiotic that was covered by Medicare. According to the Avants' complaint, "Dr. Magadia issued a verbal physician order," which called for the administration of gentamicin instead of tobramycin. Mr. Avant, however, was to receive gentamicin for only one week, as opposed to the two weeks' dosage of tobramycin previously prescribed. The Avants alleged that Dawn Hobbs, a registered nurse, relayed Dr. Magadia's new order to McNamara.
The Avants further alleged that McNamara breached the applicable standard of care by "incorrectly recording and/or filling the gentamicin order," which resulted in Mr. Avant receiving gentamicin for two weeks instead of one week. The administration of two weeks' of gentamicin allegedly resulted in Mr. Avant suffering permanent injuries. According to the Avants' complaint in their action against Southern Medical, the last dose of gentamicin was administered to Mr. Avant on or about January 4, 2010, and, on January 10, 2010, he presented to a hospital emergency room, complaining of weakness, difficulty walking, and tinnitus. The Avants alleged that, on January 14, 2010, Mr. Avant was diagnosed with "severe Gentamicin toxicity, ototoxicity, bilateral vestibulopathy, and acute renal failure." The Avants also asserted that Mr. Avant's condition caused him to suffer multiple falls, permanent hearing loss, loss of mobility, and other problems.
In addition to Southern Medical, the Avants also sued AlaCare Home Health Services, Inc., which employed the medical-care providers who intravenously administered the gentamicin to Mr. Avant in his home. The Avants did not sue McNamara.
The Avants asserted that Southern Medical was liable for the acts and omissions of its employees and agents based on the doctrine of respondeat superior. In addition, the Avants alleged that Southern Medical was directly liable for failing to hire competent pharmacists, failing to properly train its staff, failing to properly supervise its staff, and failing to implement policies and procedures aimed at preventing errors in dispensing medication.
*215 Mrs. Avant stated a claim alleging loss of consortium.
Benchmark provided Southern Medical with a defense to the Avants' claims. Eventually, the Avants and Southern Medical settled their dispute, and Benchmark paid the settlement amount. In February 2014, Benchmark, as Southern Medical's subrogee, sued McNamara, seeking to recover the funds it had paid the Avants as settlement of their claims against Southern Medical. Benchmark's complaint alleged that "Benchmark, pursuant to its policy of insurance issued to Southern Medical, is contractually and equitably subrogated to Southern Medical's rights and privileges." Benchmark also alleged that the Avants' claims against Southern Medical were "predicated upon the alleged malfeasance, actions and/or omissions and active negligence of Southern Medical employee ... McNamara" and that "[a]ny and all monies paid for [the] settlement were expressly for any and all allegations of liability arising out of vicarious liability and/or respondeat superior." Benchmark asserted various claims against McNamara based on the theory of indemnity. Benchmark also sought a judgment declaring that McNamara was "legally responsible for any and all damages incurred by Benchmark for his malpractice and for damages awarded and/or settlements paid [to the Avants]."
Benchmark and McNamara filed cross-motions for a summary judgment. The trial court denied McNamara's motion and granted Benchmark's, awarding it $465,000 in damages. McNamara filed a postjudgment motion to alter, amend, or vacate the summary judgment. Subsequently, he filed a motion to "supplement the record" or, alternatively, for relief from the summary judgment. McNamara's postjudgment motions were denied by operation of law, pursuant to Rule 59.1, Ala. R. Civ. P., and McNamara appealed.
Discussion
McNamara argues that Benchmark's indemnity action is time-barred under § 6-5-482, Ala. Code 1975, which is part of the Alabama Medical Liability Act, § 6-5-480 et seq. and § 6-5-540 et seq., Ala. Code 1975 ("the AMLA").[1] Generally speaking, that Code section requires actions against health-care providers to be commenced within two years after the act, omission, or failure complained of. Although that deadline is subject to a discovery rule and to statutory provisions relating to the computation of limitations periods, § 6-5-482 provides further that "in no event may the action be commenced more than four years after such act" and that, "notwithstanding any provisions of such sections [relating to the computation of limitations periods], no action shall be commenced more than four years after the act, omission, or failure complained of." McNamara points out that the acts, omissions, or failures forming the basis of the Avants' medical-malpractice action against Southern Medical occurred in December 2009, that Mr. Avant first suffered injury in January 2010 or earlier, and that Benchmark did not commence the indemnity action against McNamara until February 2014, more than four years later.
For its part, Benchmark argues that the AMLA does not apply to all actions against health-care providers. For example, in Thomasson v. Diethelm, 457 So.2d 397 (Ala. 1984), a respiratory therapist alleged that two physicians working at the hospital where the therapist worked failed to warn her that a patient for whom she was providing care had hepatitis. This Court held that the therapist's claims were not governed by the AMLA, stating that *216 "[w]hen the entire statute is considered, particularly the section defining 'medical liability,' it seems clear that the legislature was addressing liability of medical professionals in the context of patient-doctor and patient-hospital relationships." Id. at 399.
In George H. Lanier Memorial Hospital v. Andrews, 901 So.2d 714 (Ala. 2004), this Court held that the AMLA did not apply to claims against nurses who had harvested the corneas of a deceased child without the proper consent. The Court in Andrews noted that "the complained-of actions were not performed in the course of providing health-care services to a patient" and that "a health-care provider cannot inflict a 'medical injury' upon a person who is already deceased." 901 So.2d at 721.
In Taylor v. Smith, 892 So.2d 887 (Ala. 2004), the Court considered a plaintiff's action against a physician after the plaintiff had been injured in a car accident involving one of the physician's patients. At the time of the accident, the patient was under the influence of methadone that had been provided by the physician. In considering whether the AMLA applied, this Court stated:
"[T]he [AMLA] applies 'only to medical-malpractice actions,' Mock v. Allen, 783 So.2d 828, 832 (Ala. 2000), 'in the context of patient-doctor and patient-hospital relationships.' Thomasson [v. Diethelm], 457 So.2d [397] at 399 [ (Ala. 1984) ]. By definition, a 'medical-malpractice action' is one for redress of a 'medical injury.' See § 6-5-540 (purpose of the Act is to regulate actions for 'alleged medical injury') (emphasis added); see also Ala. Code 1975, § 6-5-549.1 (same). Because the [plaintiff was] seeking recovery for damages and injuries arising out of an automobile accident, not 'medical injuries,' this is not a medical-malpractice action. Consequently, it is neither subject to-nor barred by-the Act."
892 So.2d at 892-93.
In Ex parte Addiction & Mental Health Services, Inc., 948 So.2d 533 (Ala. 2006), the plaintiff, a patient at a residential treatment center, sued the treatment center after it allegedly disclosed the patient's confidential information to third parties. This Court rejected the treatment center's argument that the venue provisions of the AMLA applied to the patient's action, holding that his claims were not subject to the AMLA because he was not seeking redress for a "medical injury":
"[I]n the instant case, the AMLA applies only if [the plaintiff's] claim seeks redress for a 'medical injury.' Yet [the plaintiff] does not claim to have suffered a 'medical injury'; rather, he argues that he 'suffered economic damages, damage to his reputation, employment related injuries, and other injuries primarily economic in nature.' Furthermore, the only medically related injury he asserts he suffered is alleged to be the result of the claimed invasion of privacy, breach of contract, and breach of a fiduciary duty:
" 'As a direct and proximate result of [the defendant's] actions, [the plaintiff] sustained physical, mental and emotional anguish and distress, all to his general damage. As a direct and proximate result of [the defendant's] actions, [the plaintiff] was caused to incur medical expenses for psychiatric treatment and will continue to incur said expenses in the future.'
"Therefore, although [the plaintiff's] claims allege a breach of a duty that is derived from, and dependent upon, the health-care provider/patient relationship, they do not involve medical malpractice or medical injury per se. Thus the injuries [the plaintiff] suffered cannot properly *217 be classified as 'medical injuries' under the AMLA, and the venue provision of the AMLA does not apply."
948 So.2d at 536.
Benchmark argues that its action against McNamara is based on a right to indemnity stemming from the principal/agent relationship between Southern Medical and McNamara and that the action is not a medical-malpractice case in which a patient seeks redress for a medical injury. Specifically, Benchmark asserts that "[t]his case does not fall within the AMLA because it is an action in which an employer seeks indemnification from an employee." Thus, Benchmark asserts, the action is not governed by the deadlines set out in § 6-5-482.
McNamara points out that, although Benchmark's indemnity action is technically not one in which a patient-plaintiff seeks to recover for a medical injury, it is undisputed that the indemnity action is predicated upon a patient's efforts at recovering for such a medical injury. Moreover, McNamara points out that subsection (b) of § 6-5-482 specifically references § 6-2-6, Ala. Code 1975, which is a statutory provision governing the computation of the limitations period typically applicable to principal/agent indemnity actions. Section 6-5-482 provides in full:
"(a) All actions against physicians, surgeons, dentists, medical institutions, or other health care providers for liability, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act, or omission, or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act; except, that an error, mistake, act, omission, or failure to cure giving rise to a claim which occurred before September 23, 1975, shall not in any event be barred until the expiration of one year from such date.
"(b) Subsection (a) of this section shall be subject to all existing provisions of law relating to the computation of statutory periods of limitation for the commencement of actions, namely, Sections 6-2-1, 6-2-2, 6-2-3, 6-2-5, 6-2-6, 6-2-8, 6-2-9, 6-2-10, 6-2-13, 6-2-15, 6-2-16, 6-2-17, 6-2-30, and 6-2-39 ; provided, that notwithstanding any provisions of such sections, no action shall be commenced more than four years after the act, omission, or failure complained of; except, that in the case of a minor under four years of age, such minor shall have until his eighth birthday to commence such action."
(Emphasis added.) Thus, one of the "provisions of law relating to the computation of statutory periods of limitation," to which subsection (a) of § 6-5-482 is subject, is § 6-2-6, which provides:
"When an injury arises from the act or omission of a deputy or agent, the time for the limitation of an action by the principal against such deputy or agent does not commence to run until the liability of the principal for the act or omission of such deputy or agent is ascertained by an action of the party aggrieved against the principal."
McNamara asserts that, in referencing § 6-2-6, the legislature made clear its intent that actions in which a principal seeks indemnification for liability arising from the medical malpractice of its agent are subject to the time-bar provisions of *218 § 6-5-482. Otherwise, he asserts, the legislature's reference to § 6-2-6 in § 6-5-482 would be "superfluous." See generally Ex parte Welch, 519 So.2d 517, 519 (Ala. 1987) (" 'A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.' " (quoting 2A Norman J. Singer, Sutherland Statutes and Statutory Construction § 46.06 (4th ed. 1984))). McNamara also argues that, because the "act, omission, or failure complained of" occurred more than four years before Benchmark commenced its indemnity action, that action is time-barred.
In Horn v. Citizens Hospital, 425 So.2d 1065 (Ala. 1982), this Court stated:
"The legislature first enacted a medical malpractice statute of limitations in 1953. Act of Sept. 17, 1953, No. 766, 1953 Ala. Acts 1027 (codified at Ala. Code Tit. 7 § 25(1) (1940)). Act No. 766 provided:
" 'Section 1. All actions against physicians and surgeons, and dentists for malpractice, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act or omission or failure giving rise to the cause of action, and not afterwards. Provided that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier, provided further that in no event may the action be commenced more than six years after such act.
" 'Section 2. Section 1 of this act shall be subject to all existing provisions of law relating to the computation of statutory periods of limitation for the commencement of actions; namely, Title 7, Sections 18, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 40, 42, 43, 44, 47, 48 of the Code of 1940.'
"This act was the precursor to the statute of limitations provision enacted in the Medical Liability Act by the legislature in 1975. Act of Sept. 23, 1975, No. 513, § 4, 1975 Ala. Acts 1149, 1150 (codified at Ala. Code § 6-5-482 (1975))."[2]
425 So.2d at 1068-69 (emphasis added). As the above-emphasized language shows, Title 7, Section 44, of the Code of 1940 was referenced in the original version of what eventually became § 6-5-482. Section 44 was later recodified at § 6-2-6, Ala. Code 1975. Thus, when the original version of what is now § 6-5-482 was enacted, it was, without additional proviso, subject to the proposition that the limitations period applicable to a cause of action by a principal against its agent "does not commence to run until the liability of the principal for the act or omission of such deputy or agent is ascertained by an action of the party aggrieved against the principal." In 1975 when it adopted the AMLA, the legislature added the additional language stating that, "notwithstanding any provisions of [the listed Code sections, including what is now § 6-2-6 ], no action shall be commenced more than four years after the act, omission, or failure complained of."
In its appellee's brief, Benchmark does not specifically discuss § 6-5-482(b) or its reference to § 6-2-6. Accordingly, Benchmark has provided no alternative explanation as to why the legislature would include in § 6-5-482 a reference to that *219 Code provision, other than in anticipation of indemnity actions like the one involved in the present case. Based on the history and language of the relevant statutes, this Court concludes that § 6-5-482 is applicable to Benchmark's indemnity claim against McNamara. Although precedent from other jurisdictions is not entirely consistent, courts have applied medical-malpractice statutes of limitations or repose to indemnity actions brought against medical providers responsible for medical injuries. See, e.g., Uldrych v. VHS of Illinois, Inc., 239 Ill.2d 532, 347 Ill.Dec. 694, 942 N.E.2d 1274 (2001) (holding that a hospital's indemnity claim against two doctors, which was predicated on a medical-malpractice claim against the hospital based on vicarious liability for the doctors' negligence, was subject to a statute of repose applicable to medical-malpractice claims); Columbia/CSA-HS Greater Columbia Healthcare Sys. v. South Carolina Med. Malpractice Liab. Joint Underwriting Ass'n, 394 S.C. 68, 713 S.E.2d 639 (Ct. App. 2011) (same); Christus St. Vincent Reg'l Med. Ctr. v. Duarte-Afara, 267 P.3d 70 (N.M. Ct. App. 2011) (same). But see Avera St. Luke's Hosp. v. Karamali, 848 F.Supp.2d 1017 (D. S.D. 2012) (holding that a statute of limitations applicable to medical-malpractice actions did not apply to a hospital's indemnity claim against a physician).
Section 6-5-482(b), by referencing § 6-2-6, indicates that the applicable limitations period is subject to the proposition that the deadline by which a principal must commence an indemnity action for its agent's action begins to run when the principal's liability "is ascertained by an action of the party aggrieved." The statute further provides, however, that "no action shall be commenced more than four years after the act, omission, or failure complained of." It is clear to this Court that the phrase "act, omission, or failure complained of" refers to the act or omission of the health-care provider that resulted in a medical injury to the patient. In the present case, that act or omission occurred more than four years before Benchmark commenced its action against McNamara.[3]
In an argument that appears to be based partly on policy considerations, Benchmark asserts that its indemnity action against McNamara did not accrue until "Benchmark paid the settlement to the Avants on behalf of Southern Medical in February 2014" and that the "trial court correctly rejected McNamara's request to implement a statute of limitations that would have expired before Benchmark paid any claims." As Benchmark points out, there is precedent construing the periods of § 6-5-482(a) as beginning to run when a medical-malpractice claim "accrues." See generally Crosslin v. Health Care Auth. of Huntsville, 5 So.3d 1193, 1196 (Ala. 2008). Although Benchmark provides citations to precedent discussing the accrual of third-party indemnity claims, it does not discuss any authority dealing with the accrual of an indemnity claim by a principal against its agent. The Court does note, however, that, in Alabama Kraft Co. v. Southeast Alabama Gas District, 569 So.2d 697, 700 (Ala. 1990), in discussing indemnity between a principal and an agent, the Court stated that "a right to indemnity does not arise ... until a master or principal pays damages arising from his servant's or agent's negligent or fraudulent acts." Consistent with the proposition that a principal's indemnity action does not necessarily accrue at the time of the act or omission of the agent, *220 § 6-2-6, Ala. Code 1975, provides that the statute of limitations applicable to a principal/agent indemnity claim "does not commence to run until the liability of the principal for the act or omission of ... [the] agent is ascertained by an action of the party aggrieved against the principal." That section, however, is one of the provisions § 6-5-482(b) specifically incorporates, but subjects to the further proviso that "no action shall be commenced more than four years after the act, omission, or failure complained of." Because the act complained of occurred in January 2010 and Benchmark sued McNamara in February 2014, we must conclude that Benchmark's indemnity action is time-barred under § 6-5-482. Thus, the trial court erred in entering a summary judgment in favor of Benchmark and in denying McNamara's motion for a summary judgment.
REVERSED AND REMANDED.
Stuart, C.J., and Main and Wise, JJ., concur.
Bolin, Parker, Shaw, and Bryan, JJ., concur in the result.
Murdock, J., dissents.
SHAW, Justice (concurring in the result).
I concur in the result.
The dispositive issue in this case is whether the statute of limitations for an action under the Alabama Medical Liability Act ("the AMLA"),[4] specifically, Ala. Code 1975, § 6-5-482, applies in this case and thus bars an indemnity action by Benchmark Insurance Company ("Benchmark"), the subrogee of Southern Medical, Inc. ("Southern Medical"), against Joseph L. McNamara, Jr., Southern Medical's employee. Specifically, McNamara, a pharmacist, allegedly improperly filled a prescription that harmed a patient, Ricky Avant. That resulted in a lawsuit by Avant and his wife against Southern Medical on the theory of, among other things, respondeat superior based McNamara's alleged malpractice in filling the prescription.[5]
After purportedly giving McNamara notice of its participation in mediation, Southern Medical settled the suit by the Avants; Benchmark, Southern Medical's insurer and subrogee, then filed an indemnity action against McNamara, seeking damages for, among other things, the amount of the settlement. The indemnity action was commenced more than four years after McNamara allegedly improperly filled the prescription and Avant was injured. The trial court entered a summary judgment against McNamara, and he appeals, arguing, among other things, that Benchmark's indemnity action, because it was commenced more than four years after the alleged malpractice, was barred by the four-year limitations period of Ala. Code 1975, § 6-5-482(b).
Benchmark maintains that the AMLA, and its statute of limitations, does not apply to its indemnity action in this case. As noted in the main opinion, the AMLA has been considered to apply in "medical-malpractice" actions that seek the redress of a "medical injury." Benchmark argues, however, that it is seeking only indemnification and that "any argument [by McNamara] contesting liability in the underlying action is improper and cannot be considered." Benchmark's brief, at 21. If this is true, and there is truly no material issue as to whether liability for medical malpractice *221 exists or whether McNamara is liable for indemnification, then I would tend to agree. However, it appears that the issue whether McNamara committed malpractice is material and unresolved and, thus, that the AMLA applies to this determination.
Stated generally, when a principal is liable for damages caused by its agent's tortious conduct, the principal may seek indemnification from the agent. Line v. Ventura, 38 So.3d 1, 13 (Ala. 2009) ("[A] principal is entitled to indemnification from its agent for damages caused by the agent's tortious conduct."). The elements of a common-law indemnification claim are as follows: "(1) the party seeking indemnity must be liable to a third party; (2) the prospective indemnitor must also be liable to the third party; and (3) as between the prospective indemnitee and indemnitor, the obligation ought to be discharged by the indemnitor." 41 Am. Jur. 2d Indemnity § 20 at 408 (2015). See also Allstate Ins. Co. v. Amerisure Ins. Cos., 603 So.2d 961, 963 (Ala. 1992).
This burden is altered depending on whether the alleged indemnitor had notice of and the ability to participate in the underlying action and its settlement. When an indemnitor has no notice of either the original suit or of the settlement by the indemnitee, the general rule is that the indemnitee, as part of its indemnity action, has the burden of establishing that the indemnitee was actually liable to the original plaintiff and that the settlement of its liability was reasonable. Watts v. Talladega Fed. Sav. & Loan Ass'n, 445 So.2d 316, 320 (Ala. Civ. App. 1984). "However, if the indemnitor is notified of the action against the indemnitee, particularly if a party therein, and can exercise his right to present [the] indemnitee's defenses under Rule 14, [Ala. R. Civ. P., then] he is precluded from contesting the indemnitee's liability in a subsequent indemnity or third-party action." Id.
When the indemnitor has the requisite notice and an opportunity to participate in the underlying action, the indemnitee, in its indemnity action, does not have to show its actual liability to the original plaintiff, i.e., that its agent was responsible and that, as the principal, it was in turn liable to the original plaintiff. Instead, " 'when the indemnitor has notice of the claim and refuses to defend, the indemnitor is bound by any good faith reasonable settlement, and the indemnitee need only show potential liability.' " Stone Bldg. Co. v. Star Elec. Contractors, Inc., 796 So.2d 1076, 1090 (Ala. 2000) (quoting 41 Am. Jur. 2d Indemnity § 46 at 382-83 (1995) (footnotes omitted in Stone; emphasis omitted)). See also Star Elec. Contractors, Inc. v. Stone Bldg. Co., 863 So.2d 1071, 1077 n.3 (Ala. 2003) (holding that, although an indemnitee was not required to prove its actual liability to the original plaintiff as part of its burden of proof in its indemnification case and the indemnitor was precluded from contesting the indemnitee's liability to the original plaintiff in a settlement for which the indemnitor had notice, the indemnitee was still required to meet its "burden of proof" as to its "potential liability" to the original plaintiff). This requirement to show "potential liability" exists to prevent the indemnitee from becoming a "volunteer" and settling a claim without risk of exposure to liability:
"A party seeking indemnification must establish that the settlement of a claim against the indemnitee was made based on a potential liability to the plaintiff, and a showing of potential liability is required because the indemnitee must not be a mere volunteer who has settled the underlying claim when there was no exposure to legal liability that obligated him or her to do so."
*222 41 Am. Jur. 2d Indemnity § 27 at 417 (2015).
In the instant case, Benchmark, as the indemnitee (as Southern Medical's subrogee), has the burden of establishing its "potential liability" to Avant; in other words, it must establish its "potential liability" for McNamara's alleged malpractice. Whether McNamara committed malpractice is still at issue; therefore, I see no reason why the AMLA's statute of limitations would not apply. Alabama Code 1975, § 6-5-482(a), provides that an AMLA action against certain health-care providers must be commenced within two years, provides a discovery rule allowing the action to be commenced within six months of discovery of "the act, or omission, or failure giving rise to the claim," but then limits the commencement of the action to no more than four years after the occurrence of those acts, omissions, or failures. Section 6-5-482(b) then incorporates certain other Code sections "relating to the computation of statutory periods of limitation for the commencement of actions," but nevertheless maintains the four-year limitation: "[N]otwithstanding any provisions of such sections, no action shall be commenced more than four years after the act, omission, or failure complained of ...." The statute of limitations for indemnification actions, Ala. Code 1975, § 6-2-6, is one of the Code sections "relating to the computation of statutory periods of limitation for the commencement of actions" incorporated by 6-5-482(b).
Section 6-5-482(b) has been described as incorporating "tolling" provisions-Code sections that interrupt the running of a statute of limitations[6] -but nevertheless limiting the application of such provisions to no more than four years from the act, omission, or failure of the medical provider. Jones v. McDonald, 631 So.2d 869, 871 (Ala. 1993). In fact, in Jones, § 6-2-6 was specifically mentioned as an example of a Code section that, in the context of § 6-5-482(b), "tolls the running of the limitations period for an action by a principal against an agent until the principal's liability is ascertained in an action by the aggrieved party." See also Ex parte Sonnier, 707 So.2d 635, 642 (Ala. 1997) (See, J., concurring in part and dissenting in part) ("[ Section] 6-5-482(b) limits the scope of operation of the various tolling provisions by stating that 'notwithstanding any provisions of such sections, no action shall be commenced more than four years after the act, omission, or failure complained of.' ") (quoting § 6-5-482(b) ). Thus, § 6-5-482(b) has generally been described as barring recovery in any AMLA action commenced more than four years after the provider's act, omission, or failure occurred, despite these tolling provisions: "[W]e construe § 6-5-482(b) and the proviso therein as barring recovery for all medical malpractice actions commenced more than four years after the wrongful act or omission producing the injury." Bowlin Horn v. Citizens Hosp., 425 So.2d 1065, 1070 (Ala. 1982) ; see also Ex parte Sonnier, 707 So.2d at 637 ("This Court has held that the four-year period of repose in the AMLA is an 'absolute bar to all medical malpractice claims which are brought more than four years after the cause of action accrues.' ") (quoting Bowlin Horn, 425 So.2d at 1070 ).
The application of § 6-5-482(b) has the curious effect of possibly barring as untimely an indemnity action before the statute of limitations under § 6-2-6 actually starts running. Section 6-2-6 provides:
"When an injury arises from the act or omission of a deputy or agent, the time for the limitation of an action by the principal against such deputy or *223 agent does not commence to run until the liability of the principal for the act or omission of such deputy or agent is ascertained by an action of the party aggrieved against the principal."
In my view § 6-2-6 is not a tolling provision in the sense that it interrupts or tolls the running of an otherwise applicable statute of limitations; rather, it simply sets a two-year statute of limitations to begin to run at the time the action accrues. See American Commercial Barge Line Co. v. Roush, 793 So.2d 726, 729 (Ala. 2000) ("[I]n an action seeking indemnification the limitations period does not begin to run until liability has become fixed. The date the cause of action accrued, then, depends on when the liability became fixed."), and Alabama Kraft Co. v. Southeast Alabama Gas Dist., 569 So.2d 697, 700 (Ala. 1990) ("[A] right to indemnity does not arise, however, until one acting as surety satisfies his principal's obligation, or until a master or principal pays damages arising from his servant's or agent's negligent or fraudulent acts."). An indemnity action is unique in that it often springs into being at the conclusion of a separate action but is based on the same act or omission at issue in that prior action; although it stems from the same wrongdoing, the statute of limitations under § 6-2-6 does not begin to run until a later time.
Section 6-5-482(b) clearly modifies the statute of limitations in indemnity actions involving AMLA claims. When applying a statute,
" ' "[w]ords used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect." ' "
DeKalb Cty. LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 275 (Ala. 1998) (quoting Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala. 1998), quoting in turn IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992) ).
Section 6-5-482(b) states that "notwithstanding" any provision of § "6-2-6," "no action shall be commenced more than four years after the act, omission, or failure complained of." The main opinion states: "It is clear to this Court that the phrase 'act, omission, or failure complained of' refers to the act or omission of the health-care provider that resulted in a medical injury to the patient." 261 So.3d at 219. I agree. The phrase "act, omission, or failure complained of" is virtually the same language used in § 6-5-482(a) specifying when the statute of limitations for an AMLA action begins to run. Section 6-2-6 states that its limitations period begins to run when the liability of the principal "for the act or omission" of its agent is ascertained by an action. Both refer to the same act or omission, but each sets a different triggering date for when the limitations period begins to run. The limitations period for an indemnity action under 6-2-6 does not begin to run at the time of the act or omission of the indemnitor; instead, it begins to run when the liability of the indemnitee is ascertained. In contrast, the four-year limitations period in § 6-5-482(b) cannot be said to start the moment that liability is ascertained-that is a different point than the point identified by the language of § 6-5-482(b), and that Code section trumps § 6-2-6. Therefore, "the act, omission, or failure complained of" in § 6-5-482(b) that starts the four-year limitations period must refer to the medical provider's acts, omissions, or failures, despite anything in § 6-2-6.
*224 In the instant case, the plain language of § 6-5-482(b) means that the statute of limitations for Benchmark's indemnity action began when McNamara allegedly committed malpractice and not, as would normally be the case under § 6-2-6 outside the context of an AMLA action, when Southern Medical's (and thus Benchmark's) liability was fixed. Under the facts of this case, the statute of limitations expired under § 6-5-482(b) before the limitations period under § 6-2-6 began to run. This is odd, but we have stated:
"It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should be."
DeKalb Cty. LP Gas Co., 729 So.2d at 276. The result of the plain language is unusual under the specific facts of this case, but it is not an "absurd and unjust result that is clearly inconsistent with the purpose and policy of the statute." City of Bessemer v. McClain, 957 So.2d 1061, 1075 (Ala. 2006). Before the 1975 amendment to what became § 6-5-482(b), discussed in the main opinion, the precursor statute to § 6-2-6 would have allowed an indemnitee to commence an action against an indemnitor within two years after the indemnitee's liability had been established. As the instant case demonstrates, this could be well after the indemnitor's malpractice had occurred. The 1975 amendment and its proviso, however, provided a cut-off point for filing an action under § 6-2-6 -no more than four years after the malpractice occurred. Bowlin Horn, 425 So.2d at 1070 ("[T]he proviso [of § 6-5-482(b) ] bar[s] recovery for all medical malpractice actions commenced more than four years after the wrongful act or omission producing the injury."). It is not clear whether the legislature anticipated, in setting the four-year maximum, that the statute of limitations for filing an indemnity action under the AMLA could end before the limitations period under § 6-2-6 started. However, that is the result of the language used. "[W]e cannot change those words to say what we believe the legislature actually intended to say. To do so would 'turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers.' " Johnson Controls, Inc. v. Liberty Mut. Ins. Co., 160 So.3d 249, 271 (Ala. 2014) (Shaw, J., dissenting) (quoting DeKalb County, 729 So.2d at 276 ).
Nevertheless, I also note that caselaw suggests that an indemnitee may nevertheless file a third-party action and join an indemnity claim against its indemnitor in the course of the original action. In Ex parte Athens-Limestone Hospital, 858 So.2d 960 (Ala. 2003), the plaintiff, Wilson, sued a hospital, alleging that it was liable for the medical malpractice of its employee, Dr. Teng. The hospital filed a third-party complaint against Dr. Teng seeking indemnification. Among other things, Wilson argued that the "indemnity claim [was] not ripe and that there [was] no justiciable controversy." Ex parte Athens-Limestone, 858 So.2d at 965. This Court rejected that argument:
"The plain language of Rule 14 [, Ala. R. Civ. P.,] discounts Wilson's argument that the Hospital's indemnity claim [against Dr. Teng] is not ripe for consideration. Rule 14 was designed for third-party claims like the Hospital's, because it provides for impleader of 'a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.' Rule 14, Ala. R. Civ. P. See also Committee Comments on 1973 Adoption to Rule 14 ('But where there is a substantive right over, Rule 14 does permit acceleration of liability by *225 allowing the original defendant to implead a third-party claimed to be liable over to him, although there may be no liability to the original defendant unless and until the original defendant is held liable to the original plaintiff.') (emphasis added)."
858 So.2d at 965. See also generally Ex parte Stonebrook Dev., L.L.C., 854 So.2d 584, 590-91 (Ala. 2003) (stating that Rule 14 was " 'adopted to prevent third-party claims, which are contingent on the outcome of original actions against third-party plaintiffs, from being dismissed as premature when brought in the same proceeding as the original action' ") (quoting Matthews Bros. Constr. Co. v. Stonebrook Dev., L.L.C., 854 So.2d 573, 579 n.3 (Ala. Civ. App. 2001) ); Capital Assurance Co. v. Johnson, 578 So.2d 1263, 1264 (Ala. 1991) (wherein a defendant filed a cross-claim seeking indemnity against its codefendant/purported agent alleging that, if the defendant was found liable to the plaintiff, then that liability would be based solely on the codefendant's negligence); and FMR Corp. v. Howard, 227 So.3d 444, 451 (Ala. 2017) (Shaw, J., concurring specially) ("I note that, generally, an indemnification claim is ripe for consideration even if the indemnitee has not yet been held liable for a claim that the indemnitor might be required to pay.").
Bolin, J., concurs.

It is undisputed in this case that pharmacists are health-care providers for purposes of the AMLA. See Cackowski v. Wal-Mart Stores, Inc., 767 So.2d 319, 325 (Ala. 2000).

Apparently Section 2 of Act No. 766 was inadvertently omitted from the Code after it was enacted but was later added via a 1965 supplement to the Code.

Mr. Avant's injury also occurred more than four years before Benchmark filed its action against McNamara.

See Ala. Code 1975, § 6-5-480 et seq. and § 6-5-540 et seq.

It appears undisputed that an action by the Avants against McNamara directly for allegedly improperly filling the prescription would be subject to the AMLA.

See "tolling statutes," Black's Law Dictionary 1716 (10th ed. 2014).